CASSIUS H. READ, Appellant, *v.* ELIZABETH PATTERSON et al., Impleaded, etc., Respondents.

Prior to and at the time of the adoption of the provisions of the Code of Civil Procedure in reference to the liability of heirs for the debts of their ancestors, they took, subject to the payment of his debts, to the extent of any deficiency of his personalty applicable to that purpose.

The right of creditors to assert and establish their claims against the heirs was not created by the Revised Statutes, their provisions in reference thereto (2 R. S. 452, §§ 32, 33) simply changed somewhat the manner of enforcing that right, and the conditions upon which the relief was made dependent.

Those modifications being, therefore, remedial in their character, did not constitute a right or a defense within the meaning of the provision of the Code of Civil Procedure (§ 3352), which declares that nothing contained in any provision of said Code shall render ineffectual or impair "any right, defense or limitation lawfully accrued or established before the provision in question took effect." (FOLLETT, Ch. J., dissenting.)

Accordingly *held* (FOLLETT, Ch. J., dissenting), that the provision of the said Code (§ 1848) modifying the conditions upon which the right of creditors of a decedent to relief in an action against his heirs were made dependent, were applicable in such an action, brought after said provision went into effect, although it appeared that the decedent died prior to the repeal of the said provisions of the Revised Statutes by the act of 1880 (Chap. 245, Laws of 1880), and prior to the going into effect of said provision of the Code.

The clause in said provision of the Code (§ 1848) declaring that "the account of the executor or administrator as rendered to and settled by the surrogate, may be used as presumptive evidence of any of the facts required to be shown," in an action against an heir to charge him with a debt of his ancestor, was not intended to and does not make mere statements, annexed to the account, but not properly before the Surrogate's Court for adjudication, presumptive evidence in such an action of the facts stated.

Upon the trial of an action to charge the heirs of McC. with the payment of his debts the account of the executor was introduced in evidence, to which was attached a schedule entitled "claims presented not passed upon or disputed, or claims correct, but unpaid," the executor testified that it included all claims brought to his knowledge; that the validity of some of these were disputed by him. There was no evidence to support a majority of these claims, and it did not appear that they were verified as required by law. The trial court in its finding as to the amount of indebtedness, included all the claims set forth in said schedule. *Held* error; that the schedule was not presumptive evidence that the claims enumerated in it were debts of the decedent.

Reported below, 55 Hun, 608.

(Argued October 21, 1891· decided June 7, 1892.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made January 24, 1890, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term, and granted a new trial.

July 6, 1872, John H. McCunn died leaving a last will and testament and two codicils, by which he attempted to dispose of all of his property. He nominated Thomas McCunn and James M. Gano as executors, and Jane W. McCunn as executrix, of his will, which was probated in December, 1872, and letters testamentary were issued to the persons so nominated, who immediately entered upon the execution of their trusts. Afterwards actions were brought to set aside parts of the will as void, which resulted in judgments declaring the fifth clause of the will, the first and third clauses of the first codicil and the second codicil invalid, except that part in which James M. Gano was nominated as an executor.

By the clauses adjudged invalid the testator attempted to

dispose of a large part of his estate, which, therefore, passed to his heirs at law and next of kin, subject to the rights of the widow.

This action was begun in 1881 to recover of the heirs at law of John H. McCunn certain debts contracted by him in his life-time to the plaintiff and his assignors.

The court found that there was due and owing on account of such debts $13,504.34. The court also found that the testator left personal property of an amount sufficient, had it been properly applied to the payment of debts, to have paid thirty-four and seven-tenths per cent of his debts, and that the heirs were liable for sixty-five and three-tenths per cent of said $13,504.34, *i. e.*, $8,818.33.

The defendants Hetricks, adjudged to pay in the aggregate $1,469.72, did not appeal from the judgment entered on the decision of the Special Term, but paid that sum to the plaintiff. The other defendants appealed to the General Term, where the judgment was reversed upon the facts proved and exceptions taken.

Further facts appear in the opinions.

*Esek Cowen* and *George Putnam Smith* for appellant.

*Preston Stevenson* and *Edmund R. Dodge* for respondents.

BRADLEY, J. This action was brought in 1882 to charge the defendants, as heirs of John H. McCunn, who died in July, 1872, with the payment of certain debts contracted by him in his life-time and due to the plaintiff at the time of the commencement of the action. It is founded upon the fact that the defendants, as such heirs, took by descent certain real estate of which McCunn died seized, and as his death was prior to the repeal of the provisions of the Revised Statutes upon the subject by L. 1880, ch. 245, the question requiring consideration on this review is whether the action is subject to the application of the statute as it existed prior to such repeal or the provisions of the Code of Civil Pro-

cedure, which as a substitute, succeeded it, and this depends upon the construction and effect in its relation to the case, of the provision of the Code (§ 3352) that "Nothing contained in any provision of this act * * * renders ineffectual or otherwise impairs any proceeding in an action or a special proceeding had or taken pursuant to law, or any other lawful act done, or right, defense or limitation lawfully accrued or established, before the provision in question takes effect." If, therefore, at that time there had accrued to the defendants any right or defense, which would be rendered ineffectual or otherwise impaired by the application to the action of the provisions of the Code of Civil Procedure, then for its purposes as further provided by the same section, the provisions of the Revised Statutes on the subject are deemed to remain in force notwithstanding such repeal. The defendants had no vested right to protection against liability for the debts of the decedent to the extent of the real estate of which he died seized, and which came to them by descent on his decease. It is true that at common law land descended or devised was not chargeable with simple contract debts of the ancestor or testator, nor was the heir liable even upon specialty, unless he was expressly named. (3 Bl. Com. 430.)

But in this state his liability was created in 1786 by statute, which also gave to the probate court the power to direct the sale of the decedent's real estate upon the condition there mentioned, for the payment of his debts. (L. 1786, ch. 27.)

And in 1801 and in 1813 further acts were passed having the same direction and of like effect, so far as related to the liability of heirs. (L. 1801, ch. 50 ; 1 R. L. 316.)

So that at the time when the provisions of the Revised Statutes relating to suits against heirs and devisees went into effect, there had been for forty years in this state a liability of heirs for the debts of their ancestor, on whose death lands had descended to them. The purpose of those statutes was to give his creditors the benefit of the estate left by their debtor, or its equivalent, and to charge those upon whom descent was cast accordingly. The practical effect of the provisions of the

Revised Statutes was the same, although the mode or practice of the proceedings to accomplish it was somewhat modified. It thus appears that prior to and at the time the substituted provisions of the Code were adopted, the heirs to whom lands had descended, took and held them subject to the payment of the debts of the ancestor, to the extent of any deficiency of his personal estate applicable to that purpose. ( *Watkins* v. *Holman*, 16 Peters, 25, 62.)

The right of his creditors to assert and establish their claims against his heirs in such case was not created by the Revised Statutes, but by them the manner of enforcing it and the conditions upon which the relief was made dependent were somewhat changed. Those modifications were matters remedial in character, and, therefore, did not within the meaning of the provision of the section before mentioned constitute a right which denied the applicability of the Code of Civil Procedure to the action for the purposes of the remedy and relief. (*Parsons* v. *Bowne*, 7 Paige, 354.)

And it is equally difficult to see how those remedial provisions of the Revised Statutes can be treated as a defense within the meaning of that section. While they would, if in force, be in the way of the plaintiff's recovery in the present action, they were merely conditions precedent to be established by him. That is to say, they imposed upon the creditor the burden of alleging and proving certain facts as a condition to the right of relief. This is not a defense in the sense which that term is ordinarily understood in its application to legal proceedings. It is a failure to produce by proceedings preliminary to the action, facts which are essential to relief, or to establish them by evidence in support of a right which the plaintiff has, and which for its efficiency is dependent upon them. The fact that the burden is imposed upon the creditor for the purpose of the remedy is lessened by the provision of the Code, does not seem to have rendered ineffectual or impaired any defense which the heirs would otherwise have had, or could have alleged and established.

It, therefore, follows that the operation of the provision of

the statute that the plaintiff must show that he "will be unable, with due diligence, to collect his debt by proceedings in the proper Surrogate's Court, and by action against the executor or administrator and against the surviving husband or wife, legatees and next of kin" (Code, § 1848), is not for the purposes of the present action suspended, or in its application to the action defeated. But as to the amount of the claims against the estate of the decedent a further question arises upon exception to the finding in that respect. The conclusion of the trial court was founded upon the assumption that they amounted to $94,768.79. The fact so found does not to that extent seem to have been supported by evidence. Upon that subject the views expressed in the opinion of Chief Judge FOLLETT are (without considering them further in that respect) adopted so far as they are to the effect that of those claims the sum of $32,394.19 was not established. For that reason the order appealed from should be affirmed and judgment absolute directed against the plaintiff.

FOLLETT, Ch. J. This action was brought to recover from the heirs of John H. McCunn debts due from him to the plaintiff, on the grounds: (1) That the personal assets of the decedent were not sufficient to pay and discharge the same. (2) That the plaintiff had been and would be unable with due diligence to collect his claims by proceedings in the Surrogate's Court, or by action against the executors, legatees and next of kin. The action was defended on the grounds: (1) That the facts prescribed by the statute as conditions precedent to a right to recover the debts of the ancestor from his heirs were not established. (2) That the claims sought to be recovered were not the debts of the decedent. (3) That the action was barred by the six years' statute of limitations.

. The plaintiff urges that section 1848 of the Code of Civil Procedure is applicable to this case, and that a recovery can be sustained under its provisions, while the defendants insist that the provisions of the Revised Statutes authorizing the collection of debts of an ancestor from his heirs are alone

applicable, and that the right of recovery must be determined by those statutes.

The following are the sections of the Revised Statutes and Code which relate to this subject:

REVISED STATUTES, PART III, CHAPTER 8, ARTICLE 2.

" § 32. The heirs of every person who shall have died intestate, and the heirs and devisees of any person who shall have died after the making of his last will and testament, shall respectively be liable for the debts of such person arising by simple contract or by specialty, to the extent of the estate, interest or right in the real estate which shall have descended to them from, or been devised to them by such person.

" § 33. But such heirs shall not be liable for any such debts, unless it shall appear either that the deceased left no personal assets within this state to be administered, or that the personal assets of the deceased were not sufficient to pay and discharge the same ; or that after the proceedings before the proper Surrogate's Court and at law, the creditor has been unable to collect such debt, or some part thereof, from the personal representatives of the deceased, or from his next of kin or legatees."

(As amended by chapter 110, Laws of 1859.)

CODE OF CIVIL PROCEDURE, CHAPTER 15, TITLE 3, ARTICLE 3.

" § 1843. The heirs of an intestate, and the heirs and devisees of a testator, are respectively liable for the debts of the decedent, arising by simple contract, or by specialty, to the extent of the estate, interest and right in the real property, which descended to them from, or was effectually devised to them by the decedent.

" § 1848. Where the action is brought against heirs, the plaintiff must show, either

" 1. That the decedent's assets, if any, within the state were not sufficient to pay the plaintiff's debt, in addition to the expenses of administration, and debts of a prior class; or

" 2. That the plaintiff has been unable or will be unable, with due diligence to collect his debt, by proceedings in the

proper Surrogate's Court, and by action against the executor or administrator, and against the surviving husband or wife, legatees, and next of kin.

"The executor's or administrator's account, as rendered to, and settled by, the surrogate, may be used as presumptive evidence of any of the facts, required to be shown by this section."

The trial court found: "52. That the assets of said John H. McCunn, deceased, within this state, were not sufficient to pay the aforesaid debts of the plaintiff, Cassius H. Read, in addition to the expenses of administration and debts of a prior class or without such addition, and that the said plaintiff was unable at the commencement of this action, and will be unable with due diligence, to collect his debts by proceedings in the Surrogate's Court of the county of New York, and by actions against the said executors and executrix, and against the surviving wife of said John H. McCunn, and legatees and next of kin."

By this finding it is evident that the trial court proceeded upon the theory that the provisions of the Code were applicable to the case.

The right of the creditors of a decedent to recover their claims from his heirs at law had no existence at common law, and is derived wholly from the statute. John H. McCunn died, his will was probated and parts of it were adjudged to be void before section 1848 of the Code of Civil Procedure, above quoted, went into effect, but this action was brought after that article took effect. By section 32 of the Revised Statutes, the heirs of the decedent are not liable for their ancestor's debts unless it shall appear: (1) That the deceased left no personal assets within this state to be administered; or (2) that the personal assets of the deceased were not sufficient to pay and discharge the same; or (3) that after the proceedings before the proper Surrogate's Court and at law, the creditor has been unable to collect such debt, or some part thereof from the personal representatives of the deceased, or

from his next of kin or legatees. These were statutory conditions precedent to the right of recovery on the part of the creditors, and prescribed the circumstances which must exist to render the heirs liable.

The legislature has the power to prescribe the course of descent of real property, and to impose upon those who accept of it, liabilities to others, like the payment of taxes to the sovereign, and of the debts of the decedent to his creditors. But the rights of the heir vest upon the death of the ancestor, subject to the conditions, limitations and liabilities then imposed by existing statutes, which cannot be enlarged by subsequent legislation.

It is apparent, we think, that the legislature, by enlarging the rights of creditors and limiting those of heirs by the adoption of section 1848 of the Code, did not intend to make the new liability retroactive and applicable to descents which had theretofore occurred, but only to such as should thereafter occur.

Section 3352 of the Code provides: "Nothing contained in any provision of this act, other than in chapter fourth (which relates to 'limitation of actions'), renders ineffectual or otherwise impairs   *   *   *   any right, defense or limitation lawfully accrued or established before the provision in question takes effect, unless the contrary is expressly declared in the provision in question."

There is no declaration in the Code that article 2 of title 3 of chapter 15 was intended to apply to the rights of creditors of decedents against heirs, or to the defenses of heirs, in cases arising before the adoption of the Code. The absence of such a declaration seems to settle the question that the case at bar is governed by the provisions of the Revised Statutes, and not by those of the Code.

It is quite apparent that section 1848 of the Code, above quoted, enlarges the rights of creditors and the liability of the heirs of decedents by permitting recoveries from the heirs when it appears that the creditors *will be* unable with due diligence to collect their debts by proceedings in the proper

Surrogate's Court, and by action against the executor, or administrator, or wife, legatees or next of kin. This limitation upon the rights of the heirs not being a part of the statute at the time of descent cast, it cannot now be imposed as an additional burden upon the rights which they had previously acquired. The facts found in the fifty-second finding are sufficient, if supported by the evidence, to sustain a recovery under the Code, had it been in force at the death of McCunn; but it not having been, no effect can be given to the part of it which finds that the plaintiff *will be* unable with due diligence to collect, etc.

Sections 32 and 33 of the Revised Statutes above quoted do not prescribe a rule of procedure for enforcing the liability of heirs, but prescribe the conditions upon which recoveries may be had from heirs, and lay down a substantive rule of law. This judgment must be supported, if at all, under the second alternative subdivision contained in section 33 of the Revised Statutes — that the personal assets of the deceased were not sufficient to pay and discharge the debts due the plaintiff. The court found that the debts of the estate amounted to $94,768.97, and that the assets applicable to the payment of the debts of the plaintiff's class was $32,887.29. One hundred and one claims, amounting to $70,971.73, were listed by James M. Gano, one of the executors, upon the paper known in this litigation as Schedule H, which was made up by him and entitled, " Claims presented, not passed upon or disputed, or claims correct, but unpaid." This executor was called by the plaintiff as a witness, and he testified that the schedule included all claims brought to his knowledge, and that the validity of some of them were disputed by him. Among other claims in the schedule was one presented by Doolittle, Davis & Lyon for $14,000, which he testified that he rejected for good cause, and that the claim was never verified, nor were any proceedings taken to collect it. Another claim presented by James S. Morgan for $18,394.19, the executor testified, was excessive at least, that it had never been verified, nor had any proceedings been taken to collect it. These two claims,

amounting to $32,394.19, were not only not established by any evidence, but were actually discredited by the only witness called to establish them. Aside from the claims in suit, and one or two others contained in Schedule H, no evidence was given to support the validity of any of them, nor does it appear that they were verified as required by the statute. (2 R. S. 88, § 35.)

The court found, in effect, that if the plaintiff had exercised due diligence and compelled the application of the assets, $32,887.29, toward the payment of the debts, $94,768.97, that .347 of the debts would have been paid, and so gave the plaintiff a judgment for but .653 per cent of their claims against the defendant. As above shown, the two claims, amounting to $32,394.19, were not established as debts against the estate, which deducted from $94,768.97 leaves $62,374.78 of debts established against the estate. The assets, $32,887.29, applicable to the payment of these debts, would have paid .5275 per cent of plaintiff's claim. The total amount of plaintiff's claims, as established by the Special Term, amounted to $13,504.34, .5275 per cent of which amounts to $7,123.54, which deducted from $13,504.34 leaves $6,380.80 recoverable against the defendants, instead of $8,818.33.

It is urged in behalf of the plaintiff that Exhibit H became presumptive evidence of the existence of the debts enumerated therein by virtue of the last paragraph of section 1848 of the Code of Civil Procedure, above quoted. Assuming that this provision is but a rule of evidence and applicable to this case, it does not aid the plaintiff, for Exhibit H was no part of the executor's account, but is a mere list of claims which had come to his knowledge. True, it was annexed to the account which he filed with the surrogate, but the validity of these claims was not passed on in any way by the Surrogate's Court, and the list is not presumptive evidence that the claims enumerated therein are the debts of the decedent. Undoubtedly the executor's account of moneys received and disbursed as allowed by the surrogate is presumptive evidence of the amounts received and paid in actions against the heirs, but the provision was not

intended to make mere statements, not properly before the Surrogate's Court for adjudication, evidence in such actions. It is not asserted, in behalf of the plaintiff, that the heirs are liable because it appears that the deceased left no personal assets within this state, for the contrary is conceded. Nor is it claimed that proceedings have been taken before the proper Surrogate's Court and at law for the collection of the debts sought to be recovered in this action, and so there is no ground left upon which this recovery can be sustained, except under the second alternative subdivision of section 33, and we have shown, we think, that the evidence is insufficient to sustain the finding under that section.

We think it was well held at Special and at the General Terms that the plaintiff's claims were established as debts contracted by John H. McCunn, and that the Statute of Limitations had not applied as a bar.

The order of the General Term should be affirmed, and judgment absolute rendered against the appellant, with costs.

VANN, HAIGHT and BROWN, JJ., concur with BRADLEY, J. All concur with FOLLETT, Ch. J., on the second ground discussed by him, except POTTER, J., not voting, and PARKER, J., not sitting.

Judgment affirmed.