Laura Cunningham, Plaintiff, *v.* John Scott, Defendant, Impleaded with Elihu H. Ropes.

*Bills and notes — a holder of, must prove himself to be a bona fide holder thereof, where the inception of the paper is illegal — gross carelessness is evidence of bad faith — payment of value, how far conclusive — presumption that the common law prevails in another State.*

Where it is shown that a promissory note had an illegal inception a holder thereof can no longer rest upon the presumptions which ordinarily attend his position, but must show the circumstances under which the note came into his possession and that he has acted in good faith.

Gross carelessness will not, as a matter of law, defeat the title of a purchaser for value, but it constitutes evidence of bad faith.

The payment of value for negotiable paper is a circumstance to be taken into account with other facts in determining the good faith of the purchaser, but it is not conclusive, and when it appears that a note was obtained under such circumstances as would prevent the original holder from maintaining an action upon it, it is only in the absence of all evidence tending to show notice to or bad faith on the part of the purchaser that the payment of value can be deemed conclusive.

In the absence of proof to the contrary courts of the State of New York will assume that the common law prevails in another State as it does in the State of New York.

Motion by the defendant, John Scott, for a new trial upon a case containing exceptions, ordered to be heard at the General Term in the first instance, upon the verdict of a jury in favor of the plaintiff rendered by direction of the court after a trial at the New York Circuit on the 26th day of April, 1895.

*Dallas Flannagan,* for the plaintiff

*Sol. Kohn,* for the defendant.

PARKER, J. :

The note upon which recovery was had was made in the State of Texas, and, therefore, was governed by the law of that State. It does not appear, however, that the statutes of Texas affect in any manner the legal questions which grow out of this controversy, and, in the absence of proof to the contrary, the common law must be presumed to prevail in Texas as it does in New York.

In this State the law applicable to the facts of the case is that holders of negotiable paper are only entitled to the benefit of the rule of the commercial law which forbids its validity being questioned when they have purchased such paper in good faith, and in the usual course of business, before maturity, for full value and without notice of any facts affecting its validity. The holder may make out his title by presumption, but this may be impeached by evidence showing that the paper had an illegal inception, and then he can no longer rest upon presumption, but must show the circumstances under which it came into his possession, and that he has acted in good faith.

While gross carelessness will not, as matter of law, defeat title in a purchaser for value, it constitutes evidence of bad faith. The payment of value for negotiable paper is a circumstance to be taken into account, with other facts, in determining the good faith of the purchaser, but it is not conclusive when it appears that the paper was obtained under such circumstances as would have prevented the original holder from maintaining an action thereon, except in the absence of all evidence tending to show notice to, or bad faith on the part of, the purchaser. With these rules as our guide we shall briefly consider the evidence.

At the outset it may be observed that it is undisputed that the note was obtained by the payee without consideration. It was made under the following circumstances : In November, 1890, John Scott, the maker, while in the State of Texas, negotiated for the purchase of some land of one E. H. Ropes, with whom he had been acquainted for some period of time. Ropes supposed that he was, or at least said that he was, the owner of a tract of land in the county of Nueces, and he agreed to sell the same, and to take defendant's note therefor with vendor's lien on the land to be conveyed.

The note was made and delivered to Ropes, and therein was

acknowledged the vendor's lien on the land, described as security for the payment of the note.

The deed had not been made out when the defendant left the State, and it was agreed that it should be made out, executed and forwarded to him.

It turned out that Ropes did not own the land; or at least he only had title to a part interest, the greater portion of it belonging to a corporation of which one Stayton was the secretary and also the attorney, and to whom reference will later be made. Ropes, therefore, did not forward to the defendant a deed, as he agreed, as he neither had nor could obtain title. There was a total failure of consideration for the note, therefore, and Ropes had no right to put it in circulation. Ropes indorsed the note and turned it over to Stayton, as the latter alleges, in payment of a debt already due to him from Ropes for legal services rendered. Ropes testifies that it was a loan to Stayton, who reported to him that he would get into trouble unless he had some collateral to put up in addition to paper of his own. That Ropes, and not Stayton, gives the correct account of the transaction, is evidenced by a receipt signed by Stayton, which reads as follows: "Received of E. H. Ropes, as a loan, one vendor's lien note for $4,506, dated Corpus Christi, November 24th, 1890, and given by John Scott as part of the purchase money of block Number 814, on Port Aransas Cliffs."

At least the jury would have been authorized to find from this, and the other evidence in the record, that it was a loan to Stayton, to be used temporarily as collateral, and then to be returned. They would have been further authorized to find from the evidence that Stayton well knew that there was no consideration for the note.

The note, and also the receipt, bore evidence that the consideration for the note was the purchase price of the land referred to in both note and receipt — land which was at the time owned by a corporation of which Stayton was the secretary and attorney, and it appears from the testimony of Ropes that Stayton, at his request, had made a search of the title to such land, which showed that the greater part of it, if not all, belonged to the corporation.

After Stayton had acquired possession of the note he turned it over to Messrs. Swearingen & Brooks for this plaintiff, to whom he was then indebted in the sum of $2,040, considerably less than half

the face value of the Scott note. Swearingen and Stayton would have it believed that Stayton sold to Swearingen's firm for the plaintiff this note for that sum in cash.

But the plaintiff testifies that Stayton owed her that sum of money with some interest, and that she had notice from Swearingen & Brooks of their getting the note. Under what circumstances they got it, and whether it was as collateral to the indebtedness due the plaintiff, or in payment of it, she does not seem to know, or at least her testimony is silent upon that subject.

It is certainly quite remarkable that she should have no information in reference to it, and that she should not have felt called upon to inquire how it was that she should be given a vendor's lien note for more than twice the amount of the indebtedness due to her from Stayton, if it was intended merely as a payment of such indebtedness.

There is still another bit of testimony which should not be lost sight of. As we have already observed, Stayton undoubtedly knew when he borrowed the note that it was without consideration, and that any attempted disposition of it by him would be fraudulent. And yet Ropes testified that he knew that, at the time of this transaction, Stayton was attorney for Mrs. Cunningham, this plaintiff. Although this testimony was weakened somewhat by a statement of how he acquired the information, still it was entitled to consideration. In the light of these facts, we think it was a question for the jury, whether she was a good faith purchaser for value, and not a question of law for the court.

The exceptions should be sustained and a new trial ordered, with costs to the defendant to abide the event.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Exceptions sustained, new trial ordered, costs to defendant to abide event.