### DEYO v. MORSS et al.

(Supreme Court, Appellate Division, Third Department. May 4, 1898.)

1. DEVISEES—LIABILITY FOR TESTATOR'S DEBTS—PRESUMPTIONS.

Creditors of a testator sought to subject his devisees to personal liability for his debts on account of the sale of devised lands situated in another state, but their complaint failed to allege what the law of such other state was upon the subject. *Held* insufficient to charge devisees, as it must be

assumed that the common-law rule prevailed in such state, by which devised
lands were exempted from liability for the testator's debts.

**2. SAME—CONFLICT OF LAWS.**

The devisees of a testator cannot be held personally liable for his debts
by the laws of New York, on account of a sale of devised land situated in
another state, when, under the law of the latter state, their right to the
devised lands was absolute.

Appeal from trial term, Greene county.

Action by Edmund Deyo against Foster B. Morss and others. From
a judgment upon the decision of the court at a trial term dismissing
the complaint upon the ground that the complaint does not state facts
sufficient to constitute a cause of action, and that the court has not
jurisdiction of the subject of the action, plaintiff appeals. Affirmed.

The action was commenced in June, 1890, and was brought by the plaintiff,
in behalf of himself and all others who are creditors of the estate of Burton G.
Morss, deceased. It is alleged in the complaint that said Morss died at his resi-
dence in Greene county on the 13th day of September, 1884, leaving a large
amount of real and personal property, some of which was situated at his death
in the state of New York, and another portion was situated in the state of
Pennsylvania, and more than sufficient to pay all his debts and obligations;
that he left a last will and testament, whereby he first ordered and directed his
executors therein named to pay all his debts, and, second, devised and bequeathed
to each of his five named children, being five of the defendants herein, the one-
sixth part of all the remainder of his estate, real and personal, and to his ex-
ecutors the remaining one-sixth in trust for her son, Hannibal K. Morss, with a
provision that, in case of the death of said Hannibal without issue, such sixth
should go to his other five children in equal shares; that Foster B. Morss and
Leonidas W. Morss were named as executors; that said will was duly proved
and admitted to probate by and before the surrogate of Greene county on Sep-
tember 20, 1884, and letters testamentary thereon were duly issued on the same
day to Foster B. Morss, the other executor failing to qualify; that said Hannibal
died before the testator and without issue, and the other five children were the
only heirs at law and next of kin and devisees of the testator; that the testator
left numerous creditors; that the plaintiff is a creditor to the amount of about
$4,570, besides interest, and his debt has been allowed by the executor; that all
the debts of the testator now remaining due amount at least to about $11,000,
besides interest; that the creditors have been and will be unable, with due dili-
gence, to collect their debts by proceedings in the proper surrogate's court, and
by action against the surviving wife, legatees, and next of kin of said deceased,
or either of them, and that the assets of the testator were not and are not suf-
ficient to pay the said debts, and that the real property, if any, which descended
to the heirs, was and is not sufficient to pay said debts, and that the creditors
have been and will be unable, with due diligence, to collect their debts by action
against such heirs or any of them; that on the 16th August, 1886, the de-
fendants Foster B. Morss, Burton G. Morss, Rosaline A. Tremper, and Arabella
L. Munn aliened and conveyed to the defendant Leonidas W. Morss a large
quantity of real estate, of which said four named defendants were seised and
possessed as devisees, and devised to them under said will, situated in Wayne
and Pike counties, in the state of Pennsylvania, and consisting of the undivided
three-fifths of the lands and premises of which the testator died seised, including
22 parcels specifically described; that said Leonidas, in consideration of such
conveyance, paid to each of the grantors the sum of $6,000, and the value of the
interest of each one so conveyed was $15,000; that, of the lands so devised and
described, said Leonidas at divers dates, from December 22, 1885, to May, 1890,
conveyed the undivided one-fifth of several of said parcels, the interest so
alienated being of the value of $4,000; that all the personal estate and all the
real estate of said testator within this state has been sold, and the proceeds of
such sales have been applied to the payment of the debts of the testator, leaving
unpaid debts as above stated; that three years and upwards have elapsed since
letters testamentary were granted within this state.

The defendants severally answered, and at the opening of the trial each moved to dismiss the complaint, upon the grounds (1) that the complaint does not state facts sufficient to constitute a cause of action; (2) that the court has no jurisdiction of the subject of the action. These motions were granted, and from the judgment accordingly entered the plaintiff appeals.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

John A. Griswold, for appellant.

G. D. B. Hasbrouck, Sidney Crowell, Howard Chipp, and A. M. Murphy, for respondents.

MERWIN, J. The controversy in this case arises from the circumstance that the lands, which were devised to the defendants and which they sold, and by reason of which the plaintiff seeks to impose upon them a personal liability for the debts of the testator, are situated in the state of Pennsylvania. The right of the defendants to take and hold the lands in question depended upon the laws of the state of Pennsylvania. "It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated." U. S. v. Fox, 94 U. S. 315, 320. Its tenure, mode of enjoyment, and transfer are to be regulated by the laws of its locality. 2 Kent, Comm. 429; Story, Confl. Laws, § 424. At common law, land descended or devised was not chargeable with simple contract debts of the ancestor, nor was the heir or devisee personally liable. Kingsland v. Murray, 133 N. Y. 170, 174, 30 N. E. 845; Read v. Patterson, 134 N. Y. 128, 131, 31 N. E. 445; 4 Kent, Comm. 419; Wait, Act. & Def. 489. There is in the complaint no allegation of what the law of Pennsylvania is on this subject. We must therefore assume that upon this subject the common law there prevails. Lane v. Wheelwright, 69 Hun, 180, 23 N. Y. Supp. 576, affirmed 143 N. Y. 634, 37 N. E. 826; Cunningham v. Scott, 90 Hun, 410, 35 N. Y. Supp. 881; Debevoise v. Railroad Co., 98 N. Y. 377. In the Kingsland Case it was held that the title to real estate, upon the death of the owner, vests immediately in his heirs and devisees, and it can be taken for the payment of his debts only by virtue of the statute, and the statutory provisions must be strictly pursued. It follows, therefore, that, under the allegations of the complaint, we must assume that there was not under the law of Pennsylvania, at the time of the sale by defendants of the lands in question, any charge on the lands or on the defendants for the debts of the ancestor. They took an absolute title to the proceeds, so far as the law of the place could give it.

It is hardly claimed that the laws of the state of New York had any operation upon the lands in Pennsylvania, or that, prior to the sale of the lands, there was, under our laws, any lien or charge that the plaintiff could here enforce. The claim of the plaintiff is, in substance, that the defendants, residents of this state, having sold the lands and received the proceeds, are personally liable, under the law of this state, to the extent of such proceeds, for the payment of the

debts of their testator.    Section 1843 of the Code is claimed to be applicable, which provides that:

"The heirs of an intestate, and the heirs and devisees of a testator, are respectively liable for the debts of the decedent, arising by simple contract, or by specialty, to the extent of the estate, interest, and right in the real property, which descended to them from, or was effectually devised to them by, the decedent."

A personal liability is claimed under the provision in section 1854 that if, upon the commencement of the action, the defendant has aliened the property, the plaintiff may take a personal judgment. There being no lien or charge to enforce, of course the provisions of the Code so far do not apply.

The primary liability, however, under the Code, was upon the land, and the heir or devisee was not personally liable unless he had aliened the property.    It was so held in Schermerhorn v. Barhydt, 9 Paige, 29. It was the evident contemplation of the statute that there should exist a subject within its jurisdiction liable to a lien or charge, as a condition precedent to a personal liability.    The heir or devisee must receive something by virtue of a law of the state before he is charged with a liability not existing in the absence of a statute.    The reason for the personal liability was the disposition of something which, had it not been disposed of, might have been reached by the creditor under the provisions of the law.    If the ownership by the defendants of the proceeds of the lands sold was absolute under the law by virtue of which they obtained them, it is difficult to see upon what principle their ownership can be here impaired.

In 1 Story, Eq. Jur. § 744a, it is said:

"Nor will a court of equity enforce against defendants who have in their hands proceeds of the sale of lands situated out of the jurisdiction the same equities to which such proceeds would have been unquestionably subject had the land sold been within the jurisdiction.    The exercise of such a power seems to depend upon the fact whether the contract sought to be enforced was capable of being fulfilled by the lex loci rei sitæ; and this, although the parties are within the jurisdiction, and the proceeds of the land come into their hands in specie."

In Waterhouse v. Stansfield, 9 Hare, 234, it was held that the rights of parties interested in the proceeds of the sale of land situated out of the jurisdiction do not cease to be governed by the law of the place where the property was situated by the circumstance of such proceeds being brought in specie within the jurisdiction.

In Re Swift, 137 N. Y. 77, 32 N. E. 1096, it was held that real property of a resident decedent situated out of the state was not subject to the collateral inheritance tax, although, under a power given to the executors of his will, the property had been sold by them, and the proceeds brought into this state for distribution; and it was said that, if the property in the foreign jurisdiction was in land, when, upon the testator's death, a new title or ownership attached to it, the bringing into this state of its cash proceeds subsequently, no matter by what authority of will or of statute, did not subject it to the tax.

On the part of the plaintiff, we are referred to cases where it has been held that, in cases of fraud, of trust, or of contract, the jurisdiction of a court of equity is sustainable, wherever the person may be found, although lands not within the jurisdiction of that court may be

affected by the decree, and relief is given through the exercise of the powers of the court over the person. These cases do not, I think, apply here. There is no contract between the plaintiff and the defendants; no trust or fraud. The primary and main question here is not as to the enforcement of a cause of action, but whether there is any cause of action to enforce. The action here is not for discovery or an action in the nature of a creditors' bill, nor upon a liability created by a statute of another state, as was the case of Dennick v. Railroad Co., 103 U. S. 11. The action is a statutory one, which, according to the statute, may be brought in a court of equity, but the liability cannot be increased beyond the statute by reason of the circumstance that the action is in a court of equity. The statutory provisions must be strictly preserved. Selover v. Coe, 63 N. Y. 438; Platt v. Platt, 105 N. Y. 497, 12 N. E. 22. The question is briefly this: Can the rights of the defendants to the proceeds be devested, or a personal liability be imposed upon them, by reason of receiving such proceeds, when, under the law of the state controlling the disposition of the property and by virtue of which the defendants received such proceeds, their right to the same was absolute? I think not. It should rather be assumed that our law was not intended to apply to such a case. In fact, it is at least doubtful whether there is any power in the legislature to defeat in that way the full ownership lawfully acquired. The remedy of the plaintiff as to the property devised to the defendants, which was effectually devised to them only by virtue of the laws of Pennsylvania, is, as to any liability connected with the devolution of the title, confined to such as those laws give. According to the allegations of the answers of defendants, the plaintiff has or did have a remedy under those laws; but upon this appeal we have only for consideration the allegations of the complaint

It follows that the facts alleged do not show that the defendants are liable, and that, therefore, the decision of the trial court was correct. All concur. Judgment affirmed, with costs.