EDMUND DEYO, Appellant, v. FOSTER B. MORSS, Individually and as Executor of, and Trustee under, the Will of BURTON G. MORSS, Deceased, and Others, Respondents.

*Devise of real estate situated in a State other than that of the testator's domicile — proceeds of its sale by the devisee are not chargeable with the debts of the testator — common-law rule.*

Devisees of lands which are situated in a State other than that of the testator's domicile, and are not, so far as appears, charged by the laws of that State with the obligation of his debts, do not become, upon the receipt of the proceeds of such lands sold by them, liable for the debts of their testator, although the debts have been allowed by the executor, and the claimants have not been able with due diligence to collect such debts either by proceedings in the proper Surrogate's Court or by action against the legatees and next of kin of the deceased, neither the assets of the testator nor the real property which descended to his heirs being sufficient to pay such debts.

At common law land which descended or was devised was not chargeable with simple contract debts of the testator, nor was the heir or devisee personally liable therefor.

APPEAL by the plaintiff, Edmund Deyo, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Greene on the 21st day of September, 1897, upon the decision of the court rendered after a trial at the Greene Trial Term, dismissing the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, and that the court had not jurisdiction of the subject-matter of the action.

The action was commenced in June, 1890, and was brought by the plaintiff in behalf of himself and all others who are creditors of the estate of Burton G. Morss, deceased. It is alleged in the complaint that said Morss died at his residence in Greene county on the 13th day of September, 1884, leaving a large amount of real and personal property, some of which was situated, at his death, in the State of New York, and another portion was situated in the State of Pennsylvania, and more than sufficient to pay all his debts and obligations; that he left a last will and testament whereby he first ordered and directed his executors therein named to pay all his debts, and, second, devised and bequeathed to each of his five named children, being five of the defendants herein, the one sixth part of all the

remainder of his estate, real and personal, and to his executors the remaining one-sixth, in trust for a son, Hannibal K. Morss, with a provision that, in case of the death of said Hannibal, without issue, such sixth would go to his other five children in equal shares; that Foster B. Morss and Leonidas W. Morss were named as executors; that said will was duly proved and admitted to probate by and before the surrogate of Greene county on September 20, 1884, and letters testamentary thereon were duly issued on the same day to Foster B. Morss, the other executor failing to qualify; that said Hannibal died before the testator, and without issue, and the other five children were the only heirs at law and next of kin and devisees of the testator; that the testator left numerous creditors; that the plaintiff is a creditor to the amount of about $4,570, besides interest, and his debt has been allowed by the executor; that all the debts of the testator now remaining due amount, at least, to about $11,600, besides interest; that the creditors have been, and will be, unable, with due diligence, to collect their debts by proceedings in the proper Surrogate's Court; and by action against the surviving wife, legatees and next of kin of said deceased, or either of them; and that the assets of the testator were not, and are not, sufficient to pay said debts, and that the real property, if any, which descended to the heirs, was and is not sufficient to pay said debts, and that the creditors have been, and will be, unable, with due diligence, to collect their debts by action against such heirs or any of them; that, on the 16th of August, 1886, the defendants Foster B. Morss, Burton G. Morss, Rosaline A. Tremper and Arabella L. Munn aliened and conveyed to the defendant Leonidas W. Morss a large quantity of real estate, of which said four named defendants were seized and possessed as devisees under said will, situated in Wayne and Pike counties in the State of Pennsylvania, and consisting of the undivided three-fifths of the lands and premises of which the testator died seized, including twenty-two parcels specifically described; that said Leonidas, in consideration of such conveyance, paid to each of the grantors the sum of $6,000, and the value of the interest of each one so conveyed was $15,000; that of the lands so devised and described, said Leonidas, at divers dates from December 22, 1885, to May, 1890, conveyed the undivided one-fifth of several of said

parcels, the interest so alienated being of the value of $4,000; that all the personal estate and all the real estate of said testator within this State has been sold, and the proceeds of such sales have been applied to the payment of the debts of the testator, leaving unpaid debts as above stated; that three years and upwards have elapsed since letters testamentary were granted within this State.

The defendants severally answered, and at the opening of the trial each moved to dismiss the complaint upon the grounds: (1) That the complaint does not state facts sufficient to constitute a cause of action; (2) that the court has no jurisdicion of the subject of the action. These motions were granted, and from the judgment accordingly entered the plaintiff appeals.

*John A. Griswold,* for the appellant.

*G. D. B. Hasbrouck, Sidney Crowell, Howard Chipp* and *A. M. Murphy,* for the respondents.

MERWIN, J.:

The controversy in this case arises from the circumstance that the lands which were devised to the defendants, and which they sold, and by reason of which the plaintiff seeks to impose upon them a personal liability for the debts of the testator, are situated in the State of Pennsylvania.

The right of the defendants to take and hold the lands in question depended upon the laws of the State of Pennsylvania. "It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated." (*United States* v. *Fox,* 94 U. S. 315, 320.) Its tenure, mode of enjoyment and transfer is to be regulated by the laws of its locality. (2 Kent Com. 429; Story Confl. Laws, § 424.)

At common law land descended or devised was not chargeable with simple contract debts of the ancestor, nor was the heir or devisee personally liable. (*Kingsland* v. *Murray,* 133 N. Y. 170, 174; *Read* v. *Patterson,* 134 id. 128, 131; 4 Kent, 419; 2 Wait Act. & Def. 489.) There is, in the complaint, no allegation of what the law of Pennsylvania is on this subject. We must, therefore,

assume that, upon this subject, the common law there prevails. (*Lane* v. *Wheelwright,* 69 Hun, 180; affd., 143 N. Y. 634; *Cunningham* v. *Scott,* 90 Hun, 410; *Debevoise* v. *N. Y., L. E. & W. R. R. Co.,* 98 N. Y. 377.) In the *Kingsland* case it was held that the title to real estate, upon the death of the owner, vests immediately in his heirs and devisees, and it can be taken for the payment of his debts only by virtue of the statute, and the statutory provisions must be strictly pursued.

It follows, therefore, that, under the allegations of the complaint, we must assume that there was not, under the law of Pennsylvania at the time of the sale by defendants of the lands in question, any charge on the lands or on the defendants for the debts of the ancestor. They took an absolute title to the proceeds, so far as the law of the place could give it.

It is hardly claimed that the laws of the State of New York had any operation upon the lands in Pennsylvania; or that, prior to the sale of the lands, there was, under our laws, any lien or charge that the plaintiff could here enforce. The claim of the plaintiff is, in substance, that the defendants, residents of this State, having sold the lands and received the proceeds, are personally liable under the law of this State to the extent of such proceeds for the payment of the debts of their testator. Section 1843 of the Code is claimed to be applicable, which provides that "The heirs of an intestate and the heirs and devisees of a testator are respectively liable for the debts of the decedent, arising by simple contract or by specialty, to the extent of the estate, interest and right in the real property, which descended to them from, or was effectually devised to them by, the decedent." A personal liability is claimed under the provision in section 1854, that if, upon the commencement of the action, the defendant has aliened the property, the plaintiff may take a personal judgment.

There being no lien or charge to enforce, of course the provisions of the Code so far do not apply.

The primary liability, however, under the Code, was upon the land, and the heir or devisee was not personally liable unless he had aliened the property. It was so held in *Schermerhorn* v. *Barhydt* (9 Paige, 29). It was the evident contemplation of the statute that there should exist a subject within its jurisdiction liable to a lien

or charge, as a condition precedent to a personal liability. The heir or devisee must receive something by virtue of a law of the State before he is charged with a liability not existing in the absence of a statute. The reason for the personal liability was the disposition of something which, had it not been disposed of, might have been reached by the creditor under the provisions of the law.

If the ownership by the defendants of the proceeds of the lands sold was absolute under the law by virtue of which they obtained them, it is difficult to see upon what principle their ownership can be here impaired. In 1 Story Equity (§ 744a) it is said: " Nor will a court of equity enforce against defendants who have in their hands proceeds of the sale of lands situated out of the jurisdiction, the same equities to which such proceeds would have been unquestionably subject, had the land sold been within the jurisdiction. The exercise of such a power seems to depend upon the fact whether the contract sought to be enforced was capable of being fulfilled by the *lex loci rei sitæ*. And this, although the parties are within the jurisdiction, and the proceeds of the land come into their hands *in specie*."

In *Waterhouse* v. *Stansfield* (9 Hare, 234) it was held that the rights of parties interested in the proceeds of the sale of land situated out of the jurisdiction, do not cease to be governed by the law of the place where the property was situated by the circumstance of such proceeds being brought in specie within the jurisdiction.

In *Matter of Estate of Swift* (137 N. Y. 77) it was held that real property of a resident decedent situated out of the State was not subject to the collateral inheritance tax, although under a power given to the executors of his will, the property had been sold by them and the proceeds brought into this State for distribution ; and it was said that if the property in the foreign jurisdiction was in land, when upon the testator's death a new title or ownership attached to it, the bringing into this State of its cash proceeds, subsequently, no matter by what authority of will or of statute, did not subject it to the tax.

On the part of the plaintiff we are referred to cases where it has been held that, in cases of fraud, of trust, or of contract, the jurisdiction of a court of equity is sustainable, wherever the person may be found, although lands not within the jurisdiction of that court

may be affected by the decree, and relief is given through the exercise of the powers of the court over the person. These cases do not, I think, apply here. There is no contract between the plaintiff and the defendants, no trust or fraud. The primary and main question here is not as to the enforcement of a cause of action, but whether there is any cause of action to enforce.

The action here is not for discovery or an action in the nature of a creditor's bill, nor upon a liability created by a statute of another State as was the case of *Dennick* v. *R. R. Co.* (103 U. S. 11).

The action is a statutory one which, according to the statute, may be brought in a court of equity; but the liability cannot be increased beyond the statute by reason of the circumstance that the action is in a court of equity. The statutory provisions must be strictly pursued. (*Selover* v. *Coe*, 63 N. Y. 438; *Platt* v. *Platt*, 105 id. 497.)

The question is briefly this : Can the rights of the defendants to the proceeds be divested, or a personal liability be imposed upon them by reason of receiving such proceeds, when under the law of the State controlling the disposition of the property, and by virtue of which the defendants received such proceeds, their right to the same was absolute? I think not. It should rather be assumed that our law was not intended to apply to such a case. In fact, it is at least doubtful whether there is any power in the Legislature to defeat in that way the full ownership lawfully acquired.

The remedy of the plaintiff as to the property devised to the defendants, which was effectually devised to them only by virtue of the laws of Pennsylvania, is, as to any liability connected with the devolution of the title, confined to such as those laws give. According to the allegations of the answers of defendants, the plaintiff has, or did have, a remedy under those laws. But upon this appeal we have only for consideration the allegations of the complaint.

It follows that the facts alleged do not show that the defendants are liable and that, therefore, the decision of the trial court was correct.

All concurred.

Judgment affirmed, with costs.