In the Matter of the Estate of NEWTON VAN ZANDT, Deceased.

Surrogate's Court, New York County, November 19, 1931.

*Taylor, Blanc, Capron & Marsh*, for the petitioner.

*Cadwalader, Wickersham & Taft*, for the respondent Gladys Van Zandt Harris.

*Armstrong, Keith & Kern*, for Jenkines & Jenkines, objecting creditors.

*Joseph P. Shea*, in person.

*John J. Cray*, special guardian.

*John J. Dwyer*, for Moore-White Clinic.

*Samuel B. Pollak*, attorney *per se*.

FOLEY, S. In this accounting proceeding numerous and complicated questions have been raised by the objections filed to the account, which involve the allowance of the claim asserted by the widow, the application of equitable principles to the issues, and the method of treatment of certain assets in the ancillary and domiciliary jurisdictions respectively in California and in New York. The account of the New York property, filed by the administrator here, shows a balance of approximately $14,000 after the payment of the expenses of administration. The total claims of all the creditors exceed that amount and the estate is apparently insolvent.

Newton Van Zandt, the decedent, died on May 2, 1923. He was a resident of the county of New York. His widow has since remarried and now is Gladys Van Zandt Harris. She asserts two claims against the estate arising out of a separation agreement entered into on July 1, 1922, between herself and the decedent.

Her first claim is for $862.67, which represents interest on a promissory note made by him as part of the separation settlement. That claim is allowed.

The second claim is based upon his written promise to pay to his wife the sum of $100 per month for the support of their infant daughter, Nancy, until the daughter shall attain the age of eighteen years. Nancy was born on March 16, 1921, and is, therefore, now ten years of age. No payments appear to have been made under the agreement since the date of the decedent's death. The general liability of the estate upon this claim has been established. Contention arises with respect to the precise amount due the widow, with respect to the consideration of certain setoffs against her claim, and as to the method of securing the payment of the monthly installments which may hereafter accrue.

In this connection the first controversy occurs (1) with respect to the treatment of certain assets left by the decedent in the ancillary jurisdiction in California, (2) as to whether there was an equitable conversion of realty there into personalty, and (3) as to the conclusiveness of the decree of the Superior Court of California setting apart certain exempt real property.

It appears that the decedent was the owner in fee of certain real estate in Hollywood, Cal. On November 1, 1922, a few months before his death, he contracted to sell this property. The conveyance under the contract of sale had not been completed at the time of his death. The widow, the claimant here, was appointed administratrix of the decedent's estate by the appropriate court in California. Subsequently, an action was brought by the purchaser, under the contract, against the administratrix for specific performance. This action was compromised by the parties and the settlement approved by the Superior Court of California. Under the agreement of compromise the title to the property was conveyed to the purchaser upon payment of the sum of $6,000 as the proceeds of the equity of the decedent in the property. During the pendency of this action for specific performance, a judicial proceeding had been brought, in the administration of the estate of the decedent, to set aside what is known as a " probate homestead " for the use and benefit of his minor daughter during her minority. The specific property set apart was the real estate which the decedent had contracted to sell. It appears that certain provisions of the Code of Civil Procedure of California authorize the allocation of exempt property for the use of the family including a homestead for the surviving wife or minor children. The wife of the decedent under her separation agreement had released her right in the real estate. His minor child was, however, entitled under the law to

this homestead right. It further appears under the law of California that a " probate homestead " may only be set apart out of the real property owned by the decedent at the time of his death.

The City Bank Farmers Trust Company, the administrator in New York, now contends that the decree of the Superior Court of California, with its adjudication that the homestead be set aside for the benefit of the minor child, was made in disregard of the decisions of the courts of that State and is not binding or conclusive in the State of New York. Its contentions are that there had been an equitable conversion of the real estate into personalty by reason of the contract of sale made by the decedent in his lifetime, and that at the time of his death the property had lost its character as realty. There appears to be some support in the decisions of the State of California for this contention, but the doctrine of equitable conversion is a mere fiction of equity resorted to only where it is necessary to determine ownership. Its application should be resorted to, only, in order to obtain equitable results. (*Ray* v. *Fowler*, 200 App. Div. 155, 163.) Distinction may, therefore, exist with respect to the retention of the nature of real property for the purpose of protecting the statutory exemptions of a widow or minor child. The superior equities of the dependents may be preferred by the court. But regardless of these considerations I hold that the decree setting apart the homestead to the minor child is conclusive in the pending proceeding. The right of the infant to take her exempt interest in the land depended upon the law of California, and the decree of its court fixing the nature of the property as realty and adjudicating the homestead right should be accepted here. (*Kinnier* v. *Kinnier*, 45 N. Y. 535, at p. 542.)

" It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whethei by deed, descent or any other mode is exclusively subject to the government within whose jurisdiction the property is situated." (*United States* v. *Fox*, 94 U. S. 315, 320.) Its tenure, transfer and succession are regulated by the laws of the locality where it is situated. The rule is similarly defined in *Clarke* v. *Clarke* (178 U. S. 186, at p. 191). " It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances." (*Deyo* v. *Morss*, 30 App. Div. 56, 58; *Hood* v. *McGehee*, 237 U. S. 611; *Frick* v. *Pennsylvania*, 268 id. 473, 490.)

The value of the interest of the probate homestead set apart to

the infant daughter was fixed by the California court at the sum of $2,670. This amount may not be taken into consideration in any way in the pending proceeding. It is to be treated as if it were exempt property under our law. It does not constitute an asset of the estate. It passes free from any liability for the debts of the decedent.

The remaining sum of $3,330, which was the balance of the proceeds of the sale of the California real estate, was taken over by the administratrix there. Administration was completed by her and the net estate, after the payment of the administration expenses, was directed to be distributed to the heirs at law pursuant to the California Statute of Distribution, which is similar to that of our own State, where a widow and children survive.

In California the widow made no assertion of her personal claim, amounting to approximately $12,000, which she now seeks to establish against the domiciliary assets in New York. Under the California decree, which judicially settled her account, there was distributed by her the sum of $1,977.53 in three equal parts to an adult daughter, and to herself as guardian of her infant daughter, and to herself for her widow's intestate share. The New York administrator contends that her failure to assert her personal claim in California is a complete waiver of her right to assert her claim in New York. In the alternative the contention is urged that having made distribution without the assertion of her claim in California, the amount awarded her here should be reduced by the distribution made by her in her representative capacity, either by the sum paid to herself and to her two children, or in any event, by the amount which she personally received as a distributee of the California property.

The determination of these questions requires the application of the rule of equity with relation to the marshalling of assets in a decedent's estate. Along with that rule, we are required to apply the principles of estoppel and waiver to the conduct of the widow. Without consideration of the rights of the creditors here, and in disregard of her personal claim against the estate, she distributed the net assets in California as if there were no debts payable out of the general estate of her husband. The New York estate is insufficient to satisfy the amount of her claim and the claims of the other creditors. Under the California law realty and personalty are treated alike as assets of the estate. Each kind of property is subject to the payment of debts. The widow should have applied the assets in California to the partial satisfaction of her claim. By her failure to do so, detriment has been sustained by the general creditors of the estate which must now be corrected in the domiciliary jurisdiction in New York.

In the ordinary course of administration, after the protection of the local creditors, the balance of assets in the ancillary administration would have been transmitted to the domiciliary administrator in New York to be used for the payment of all the established claims against the estate. In certain exceptional cases, where there are no creditors in the domiciliary jurisdiction, and where the beneficiaries reside in the ancillary State, distribution directly may be made there to avoid circuity, delay and the double expense of administration. (*Matter of Hughes*, 95 N. Y. 55.) It would be inequitable for the widow to be permitted to establish her personal claim in full here and to permit her to escape the effect of the moneys improperly applied by her in California. In my opinion, however, the failure of the widow to assert her claim in California was not a waiver of the entire amount of her personal claim. The waiver or estoppel is merely partial. (*Frost v. Koon*, 30 N. Y. 428, 450.) The sum of $1,977.53 distributed by her must be brought into the account here as part of the general estate and must be set off against the amount of her claim as allowed here.

The rule with respect to the marshalling of assets has been defined as one " which courts of equity sometimes invoke to compel a creditor who has the right to make his debt out of either of two funds, to resort to that one of them which will not interfere with or defeat the rights of another creditor who has recourse to only one of these funds." (*Farmers' Loan & Trust Co.* v. *Kip*, 192 N. Y. 266, at p. 283.) It is based " upon equitable principles called into action by the benevolence of the court." As applied to the settlement of estates it imports " an arrangement of the different funds under administration as will enable all parties having equities therein to receive their due proportions notwithstanding any intervening interests, liens, or other claims of particular persons to prior satisfaction out of a portion of these funds." (*Farmers' Loan & Trust Co.* v. *Kip, supra; Fargo v. Squiers*, 154 N. Y. 250.) In the application of the equities to her conduct, I hold that the California assets which were distributed by the widow there as administratrix, must be set off against the aggregate amount of her personal claim allowed here.

The forum of domiciliary administration is the forum in which the final account is to be cast. There the policy of assuring equality among all the creditors (within their respective classes) must be enforced. There the rights of the creditors and the distributees are to be finally adjudicated. The domiciliary forum, although treating the allowance of the accounts in the ancillary jurisdiction as, for the most part, conclusive of items there so returned, " sometimes reviews independently fundamental questions involving fraud

and error in such ancillary administration, and affecting the distribution of the estate." (Schouler Wills [6th ed.], 2831, 2832.)

The assets of the estate, wherever situated, subjected by law to the payment of debts, must be treated as the general estate applicable to the payment of all the debts. Since there is a deficiency of assets, the shares payable to the various creditors (including the widow), must be prorated in the ratio of the total assets, wherever situated, to the total debts. The amount of the widow's claim under the separation agreement with respect to past installments which have accrued is easily ascertainable. The face amount should be computed up to November 1, 1931, and the sum now payable under our decree fixed in the ratio of assets to debts. With respect to future installments, the amount should be fixed by computing the present value of the payments to be made in the remaining period until the infant daughter reaches the age of eighteen as fixed in the separation agreement. The agreement contemplated that these sums should be used for the support of the child. The widow's contention that she is entitled to be paid this entire sum outright and free from any limitation, must be overruled. The fund must be held by the administrator for the general account of the estate. The installments due the widow are to be paid out of it as they accrue. If the circumstances with respect to the child become altered, the right of the mother to receive these installments for the support of the child may, under the terms of the separation agreement, cease. (*Chanler* v. *Chanler*, 202 App. Div. 357.) The death of the child, or of the mother, are contingencies which may not be disregarded. If either of these events occur before the child attains the age of eighteen, a new situation would be presented. If the child should die, the right of the mother to the allowance, under the terms of the agreement, would be terminated. If the present value of all the installments were to be paid over to the mother and were expended or wasted by her, the child would be without support. If the child died, before attaining the age of eighteen, and the reason for the payments had ceased, the creditors would have the right to insist upon the application of the unexpended fund to the deficiency upon their claims. When the present value of future installments is fixed, the amount must be prorated so as to avoid undue preference over the other debts.

The New York administrator will be directed to retain this reduced fund and will be authorized to make the reduced monthly payments. The attorneys for the administrator and for the widow are directed to file, on or before November 30, 1931, computations of the present value of this fund. The submission of the decree may be reserved until the fixation of the various amounts under this decision.