Argued May 6, affirmed June 12, 1975

McRAE, *Appellant, v.* VOGLER, *Respondent, and* SANDS ET UX, *Intervenors-Respondents.*

536 P2d 509

*John M. Eaton,* Burns, argued the cause and filed the brief for appellant.

*Wendell E. Gronso,* Burns, argued the cause and

filed the brief for respondents and intervenors-respondents.

TONGUE, J.

By her complaint in this suit plaintiff seeks a decree declaring that a transaction in which she borrowed $6,000 and transferred to defendants certain stocks subject to an "option to [re]purchase" was a security transaction; that the subsequent transfer of such stocks without her consent was a conversion of the stocks; and that she was entitled to a judgment for $26,000 as the value of the stocks, together with $25,000 in punitive damages.

Defendants filed an answer alleging as an affirmative defense that they sold their interest in the stocks to Robert and Helen Sands subject to any interest of the plaintiff. At the same time Robert and Helen Sands filed a petition for intervention and a proposed complaint in intervention alleging that they had purchased defendants' interest in such stocks; that they had tendered the stocks into court for delivery to plaintiff upon payment of $6,000, plus interest, and that if plaintiff did not do so within a reasonable time, plaintiff's interest in the stocks should be foreclosed.

Plaintiff then filed demurrers to both defendants' affirmative answer and to the complaint in intervention. The court entered orders permitting the intervention and overruling the demurrers. Upon plaintiff's refusal to plead further the court entered judgment in favor of defendants and intervenors. Plaintiff appeals. We affirm.

Plaintiff's primary contention is that "a sale, valid on its face, may be shown to be a security transaction, so that damages may be recovered for conversion of the property put up as security," citing *Barber v. Motor Investment Co.*, 136 Or 361, 298 P 216 (1931).

Defendants admit on this appeal that the transaction by which plaintiff transferred the stock to defendants was a security transaction. It does not follow, however, that there was a conversion of the stock by defendants.

The principle issue in this case is whether a secured party who, without the knowledge or consent of the debtor, transfers his security interest and the collateral to a third party subject to the debtor's right to redeem is liable to the debtor for conversion. *Barber v. Motor Investment Co., supra,* cited by plaintiff, and decided prior to adoption of the UCC, did not involve a transfer made subject to the rights of the debtor, as in this case.

Article 9 of the UCC (ORS ch 79) does not explicitly permit nor prohibit assignment by the secured party.[1] However, such an assignment is implicitly approved in several sections. ORS 79.3020(2) states:

> "If a secured party assigns a perfected security interest, no filing under ORS 79.1010 to 79.5070 is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor."

And ORS 79.4050 states:

> "(1) A financing statement may disclose an assignment of a security interest in the collateral described in the financing statement by indication in the financing statement of the name and address of the assignee or by an assignment itself or a copy thereof on the face or back of the statement. * * *
>
> "(2) A secured party may assign of record all

---

[1] ORS 79.3110 states:

"The *debtor's* rights in collateral may be voluntarily * * * transferred * * * notwithstanding a provision in the security agreement prohibiting any transfer * * *." (Emphasis added)

or part of his rights under a financing statement by filing in the place where the original financing statement was filed of a separate written statement of assignment * * *.

"(3) After the disclosure or filing of an assignment under this section, the assignee is the secured party of record."

These sections are not directly applicable to the facts of this case because the secured interest here was perfected by transfer to defendants of possession of the collateral, rather than by the filing of a financing statement.[2]

■ When, as in this case, the collateral is in the possession of the secured party the rights and duties of the parties are controlled by ORS 79.2070. Although subsection (1) of ORS 79.2070 provides that "a secured party must use reasonable care in the custody and preservation of collateral in his possession * * *," subsection (2)(e) provides that "the secured party may repledge the collateral upon terms which do not impair the debtor's right to redeem it."[3]

In *Securities and Exchange Com'n v. H. L. Rodger & Bro.*, 444 F2d 1077 (7th Cir 1971), the plaintiff loaned his stock to the general manager of a firm who used the stock to secure a loan from the firm. When the firm in turn repledged the stock to a bank which made a loan to the firm, plaintiff claimed conversion. His claim was rejected by the court, holding (at 1081) that:

"* * * While unauthorized use of pledged col-

---

[2] ORS 79.3050 states:
"A security interest in * * * instruments * * * may be perfected by the secured party's taking possession of the collateral. * * *"

[3] "* * * [U]nless otherwise agreed * * * the secured party may repledge the collateral * * *." Summers, Secured Transactions Under the Uniform Commercial Code, 42 Or L Rev 1, 15 (1962).

lateral is a conversion, a repledge of the collateral as security for a debt of the pledgee is not considered a use prohibited by the pledgor-pledgee relationship, at least where the repledge is for a claim smaller than that for which the collateral was initially pledged, [citing authorities, including UCC § 9.207(2)(e)] * * * The repledge was not a conversion."

■ Although ORS ch 79 does not explicitly approve nor prohibit an assignment of the collateral under these circumstances, and although this is not technically a repledge under ORS 79.2070(2)(e), the same result follows under common law precedent.[4] At common law the general rule as to pledges was that the pledgee (secured party), in the absence of an agreement to the contrary, could assign his rights and transfer possession of the collateral so long as he did not impair the pledgor's (debtor's) right to redeem upon payment of the debt. *Johnson v. Mortgage Guarantee Co.*, 117 Cal App 416, 4 P2d 208, 210 (1931); *Buck v. First Nat. Bank*, 63 SD 507, 260 NW 834, 835, 99 ALR 23 (1935); and *Golden Gate Cemetery Corp. v. Oak Park Cemetery*, 83 SW2d 711, 712 (Tex Civ App 1935).[5]

Under the pleadings in this case, it appears

---

[4] The Official Comment to ORS 79.2070(2) says:

"Subsection (2) of ORS 79.2070 states rules, which follow common law precedents, and which apply, unless there is agreement otherwise, in typical situations during the period while the secured party is in possession of the collateral."

[5] See generally, 72 CJS, Pledges 77, § 43:

"In the absence of an agreement or statute to the contrary, as a general rule the pledgee or his personal representative may transfer or assign his interest under the contract, whether or not the principal debt is negotiable. So, in the absence of an agreement or statute to the contrary, the pledgee may sell or assign the principal debt and transfer the collateral to the purchaser if nothing is done to deprive the pledgor of the right to redeem on payment of the amount due on the principal debt * * *."

that defendants assigned their rights to the third party subject to plaintiff's right to redeem and that such right has not been impaired by that assignment.[6] It follows that the trial court did not err in overruling plaintiff's demurrers to the defendants' answer and to the third parties' petition to intervene. It also follows that upon plaintiff's refusal to plead further the trial court did not err in entering a decree in favor of the defendants and intervenors.[7]

Affirmed.

---

[6] Plaintiff does not contend that there was an express agreement prohibiting assignment by the defendants.

[7] Plaintiff contends that intervention is not proper in this case citing, among others, Brune v. McDonald, 158 Or 364, 370, 75 P2d 10 (1938), for the rule that "the right or interest which will authorize a third person to intervene must be of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation of the judgment." We need not decide whether that is a proper rule and whether it should apply in this case because defendants have alleged in their answer that they sold their interest subject to the plaintiff's right to redeem and plaintiff has chosen not to reply by alleging that her right to redeem has been impaired. ORS 16.130