# Chittenden Trust Company v. Milo R. Marshall and Emma Marshall

[507 A.2d 965]

No. 83-079

Present: Hill, Underwood, Peck and Gibson, JJ., and
Keyser, J. (Ret.), Specially Assigned

Opinion Filed February 7, 1986

*Thomas F. Heilmann, P.C.*, Burlington, for Plaintiff-Appellant.

*Robert J. Kurrle* and *Michael Carver*, Montpelier, for Defendants-Appellees.

**Gibson, J.** Plaintiff Chittenden Trust Company (the bank) appeals a judgment, after jury trial, awarding defendants $8,974.54 for conversion, $150,000 for malicious prosecution, and $12,500 in punitive damages. Defendants cross appeal the court's denial of their motion for a new trial on their claim for intentional infliction of emotional distress, following judgment for the bank on this claim. We reverse the monetary judgments and affirm the court's denial of the motion for new trial on the claim for intentional infliction of emotional distress.

In 1972, Milo Marshall and two other individuals formed a corporation known as The Palisades, Inc. (Palisades), which purchased land in Moretown and Waterbury, Vermont. In 1977, Milo Marshall sold his interest in Palisades to two new stockholders, receiving in return cash plus a $35,000 note, secured by a mortgage. He subsequently used the note and mortgage as collateral to secure a $30,000 loan from the bank to himself and his wife.[1]

On September 25, 1979, the bank brought suit against defendants Milo and Emma Marshall (Marshalls), seeking to recover the balance due on the allegedly delinquent note. The bank's suit alleged that the Marshalls had unreasonably refused to increase

---

[1] Although the collateral constituted "realty paper," the transaction between the bank and the Marshalls is governed by Article 9 of the Uniform Commercial Code. See 9A V.S.A. § 9-102(3); J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 22-6, at 890-91 (2d ed. 1980).

their collateral after being requested to do so, justifying the bank's calling of the note. The Marshalls contend their collateral was more than adequate and the bank's action was thus unjustified.

While the suit was pending, the bank assigned its interest in the $30,000 demand note and collateral to Palisades, in return for payment of the $30,000 note in full by Palisades. Thereafter, the bank abandoned its claim against the Marshalls, informally notifying them to this effect through the discovery process some 18 months later. Trial went forward solely on the Marshalls' counterclaims, which sought recovery against the bank in three counts: (1) conversion of the collateral; (2) malicious prosecution; and (3) intentional infliction of emotional distress.[2]

## I. *Conversion*

■ At trial, the court, sua sponte,[3] instructed the jury that the bank was liable as a matter of law for conversion in the amount of $8,974.54, because the bank had not given the Marshalls prior notice of the assignment or shown the court that it was legally entitled to assign the collateral while the lawsuit was pending. The court explained to the jury that,

> While ordinarily a bank may assign a loan package, it may not validly do so while disputes over the loan are pending, unless notice to the bank's debtor, herein the Marshalls, is given and the litigation is properly terminated as to the bank, or steps are taken to substitute the assignee, herein

---

[2] In response to defendants' counterclaims, the bank filed as third-party plaintiff several claims against Palisades, sounding in indemnity and tort. On its own motion, the court ordered these claims tried separately. The Marshalls have made no claim directly against Palisades.

[3] Although one federal circuit court has held that a court has inherent power to direct a verdict in the absence of a motion, *Peterson* v. *Peterson*, 400 F.2d 336, 343 (8th Cir. 1968), ordinarily a motion for directed verdict stating specific grounds is required. *Virginia-Carolina Tie & Wood Co.* v. *Dunbar*, 106 F.2d 383, 385 (4th Cir. 1939); *Meyers* v. *Moody*, 475 F. Supp. 232, 236 (N.D. Tex. 1979). Because we reverse, we need not address the bank's assertion on appeal that a respondent's rights are not protected, and the appearance of impartiality is not adequately maintained, when a trial court so orders, sua sponte, and thereafter delivers detailed explanations of its legal ruling to a jury that is considering other issues.

Palisades, as the party plaintiff before the assignment is made.

This ruling was erroneous.

The Marshalls contend, and the trial court mistakenly concluded, that the bank's assignment constituted a sale of the collateral within the meaning of Article 9 of the Uniform Commercial Code, requiring compliance with certain statutory procedures regarding the disposition of collateral after default.[4] We cannot agree.

■ Because the collateral had been pledged to the bank—that is, perfected by the bank's possession of it as the secured party—the bank was in a position comparable to that of a secured party who has taken possession on default. 9A V.S.A. § 9-501(1). Upon a default by the Marshalls, 9A V.S.A. § 9-504 would permit the bank to sell, lease, or otherwise dispose of the collateral, transferring to a purchaser for value all of the Marshalls' rights therein and discharging their security interest thereunder. The bank's delivery of the collateral as part of the loan-package assignment was not, however, a sale or "disposition" of the collateral within the meaning of Article 9. As § 9-504(4) makes clear, such a disposition of collateral would satisfy the debtor's obligations under the agreement itself and discharge the security interest, and the good faith purchaser would take free of underlying rights and interests. 9A V.S.A. § 9-504(4). While this may be what third-party defendant Palisades subjectively hoped or believed the transfer to have accomplished, the assignment documents clearly indicate otherwise.[5]

■ At common law, and implicitly under the Uniform Commercial Code, a creditor may assign its rights and transfer possession of collateral without the knowledge or consent of the debtor, as long as the debtor's right to redeem upon payment of the debt is not impaired. *McRae v. Vogler*, 272 Or. 230, 234, 536 P.2d 509, 511 (1975) (citing ORS 79.2070(2)(e)); see 9A V.S.A. § 9-207(2)(e) (unless otherwise agreed, secured party may repledge collateral

---

[4] See, e.g., 9A V.S.A. § 9-504(3) which states that "[d]isposition of the collateral may be by public or private proceedings [and] reasonable notification of the time and place of any . . . sale . . . shall be sent by the secured party to the debtor . . . ."

[5] We do not address the issue of whether third-party defendant Palisades was in fact a good faith purchaser.

upon terms which do not impair debtor's right to redeem). Further, a secured party's rights are cumulative. 9A V.S.A. § 9-501(1). They include the rights given in the security agreement, as limited by 9A V.S.A. § 9-501(3).[6]

The security agreement in this case expressly gave the bank the right to assign the note. Upon assignment of the note, the bank was required to deliver the pledged collateral underlying the secured note. *Van Diest Supply Co.* v. *Adrian State Bank*, 305 N.W.2d 342, 346 (Minn. 1981) ("collateral security for a debt is an incident of the debt"); *Island Pond National Bank* v. *Lacroix*, 104 Vt. 282, 294, 158 A. 684, 690 (1932) (security follows debt wherever assigned).

When the collateral is in the possession of the secured party, as here, the secured party must comply with the requirements of 9A V.S.A. § 9-207. See *McRae, supra*, 272 Or. at 233, 536 P.2d at 510 (identical requirement in Oregon). 9A V.S.A. § 9-207 states, in pertinent part, that:

> (1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. . . .
>
> (2) Unless otherwise agreed, when collateral is in the secured party's possession . . . (e) the secured party may repledge the collateral upon terms which do not impair the debtor's right to redeem it.

Whether the delivery constituted a breach of the bank's legal duty to exercise reasonable care in the custody and preservation of the collateral under 9A V.S.A. § 9-207(1), or an impairment of the Marshalls' right to redeem as contemplated under 9A V.S.A. § 9-207(2)(e), were questions of fact that should have been submitted for jury determination. See *Grace* v. *Sterling, Grace & Co.*, 30 A.D. 61, 63-64, 289 N.Y.S.2d 632, 637-38 (1968) (repledgee liable to pledgor for breach of duty of reasonable care in protecting and preserving collateral); *McRae, supra*, 272 Or. at 233-34, 536 P.2d at 510-11 (secured party, acting without knowledge or consent of debtor in transferring security interest and collateral to third-party subject to debtor's right to redeem, held not liable to debtor for conversion). The court's unsought directed verdict constituted a conclusive finding that the bank had breached its

---

[6] Subsection (3) codifies certain rights and duties which may not be waived or varied, none of which apply herein.

duty, and thus erroneously deprived the bank of its right to receive a jury determination of this issue.

## II. *Malicious Prosecution*

■ To recover for malicious prosecution, a claimant must show that the opposing party had instituted a proceeding against him without probable cause, with malice, and that the proceeding had terminated in the claimant's favor. *Anello* v. *Vinci*, 142 Vt. 583, 586-87, 458 A.2d 1117, 1119 (1983); Restatement (Second) of Torts § 674 (1977). In addition, the claimant must show that he suffered damages as a result of the prior proceeding. *Condosta* v. *Grussing*, 144 Vt. 454, 458, 479 A.2d 149, 151 (1984).

We note that claims of malicious prosecution are not favored in the law. This is because "[t]hey have an undesirable tendency to unduly discourage citizens from seeking redress in the courts." *Anello, supra*, 142 Vt. at 587, 458 A.2d at 1120 (citation omitted). Thus, this Court has stated that "verdicts in this type of action should be viewed more critically than verdicts in other tort actions." *Id.*

■ The court below instructed the jury that malicious prosecution is a suit (1) that is brought without probable cause to believe, at the time suit was brought, that there were proper grounds to prevail; (2) that is filed maliciously; and (3) that proximately causes certain damages which were reasonably foreseeable. The instructions, however, omitted the essential element that the jury must find that the prior proceedings had terminated favorably to the claimants. This was error requiring reversal.

■ Where there is no factual dispute on the issue, the question of a favorable termination may be ruled on by the court as a matter of law; but where there is a dispute, it is for the jury to determine the circumstances under which the prior proceedings were terminated. Restatement (Second) of Torts § 681B (1977).

Here, the parties do not dispute the fact of the suit's termination, but they do dispute in whose favor it was terminated. The bank contends that because it received full satisfaction for its claims by virtue of the assignment to Palisades in January 1980, its voluntary abandonment of its complaint thereafter was a termination in its favor.[7] The Marshalls, on the other hand, contend

---

[7] In August 1981, in response to a request for production of documents, the bank informed the Marshalls it considered its action "mooted" in light of its January

that the nunc pro tunc dismissal with prejudice by the court constitutes a termination in their favor.[8]

We conclude that the court's failure to submit this issue to the jury was error. Had the issue been properly presented to them, the jury might reasonably have found that the bank's claim was dismissed or abandoned, not for absence of probable cause at the inception of the lawsuit, but because the claim had been satisfied through the assignment of the note to Palisades, and default was therefore no longer of concern to the bank.

■ The court's erroneous directed verdict that the bank had tortiously converted the Marshalls' collateral may have tainted the jury's consideration of those elements of the malicious prosecution claim it was permitted to decide. The malice element of a malicious prosecution claim requires a showing that the " 'baseless suit was instituted from any improper and wrongful motive.' " *Brault* v. *Town of Milton*, 527 F.2d 730, 739 (2d Cir. 1975) (quoting *Sparrow* v. *Vermont Savings Bank*, 95 Vt. 29, 33, 112 A. 205, 207 (1921)). The element of malice may be inferred from proof of a lack of probable cause. *Northern Oil Co.* v. *Socony Mobil Oil Co.*, 347 F.2d 81, 84 (2d Cir. 1965); *Ryan* v. *Orient Insurance Co.*, 96 Vt. 291, 296, 119 A. 423, 425 (1923). The jury was asked to find whether the suit was instituted with malice, after having been instructed that the bank had committed the intentional tort of conversion. In view of the court's treatment of the bank's action as a conversion of the collateral as a matter of law, the judgment for malicious prosecution cannot stand.[9]

---

1980 assignment of the demand note and collateral to Palisades. In February 1982, counsel for the bank noted during a deposition of Milo Marshall that the bank was "not suing" him any more.

[8] While this appeal was pending, a limited remand was permitted for a judicial determination that the bank's claim had indeed gone to judgment. The trial court thereupon dismissed the claim with prejudice, nunc pro tunc, effective October 25, 1982. We are not satisfied, however, that the belated reparation overcomes the omission in the charge, particularly where a dispute exists as to the circumstances of the termination. We would be more inclined to conclude that omission of the favorable termination element was harmless had the action been withdrawn, abandoned, or terminated before the bank's assignment of the demand note to Palisades.

[9] We note in passing that the jury's award on this claim was clearly excessive and could not stand even if we affirmed the verdict on the merits. After explaining the elements of the torts of malicious prosecution and intentional infliction of emotional distress, the court instructed the jury that damages could consist of "[o]ne, any financial business loss of profit, proximately resulting from the ac-

### III. *Motion for New Trial*

In their cross appeal, the Marshalls contend the court erred when it denied their motion for a new trial on their claim of intentional infliction of emotional distress. Citing numerous testimonial references to stress experienced by Milo Marshall as a result of his dealings with the bank, the Marshalls argue that the jury's verdict in favor of the bank on this claim must have been a mistake. The Marshalls reason that by returning a verdict for malicious prosecution, together with punitive damages in connection therewith, the jury must have found that the bank intentionally inflicted emotional distress on the Marshalls.

This Court recognized the tort of intentional infliction of emotional distress as an independent cause of action in *Sheltra* v. *Smith*, 136 Vt. 472, 392 A.2d 431 (1978). The elements of this cause of action are as follows:

> [O]utrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct.

*Id.* at 476, 392 A.2d at 433.

The trial court instructed the jury in accordance with the criteria set forth in *Sheltra*. The Marshalls made no objection to the submission of the issue to the jury, nor did they object to the court's charge. Inasmuch as they made no motion for a directed verdict on their claim of intentional infliction of emotional distress, the Marshalls cannot now raise on appeal, as a question of law, the sufficiency of the evidence to support the verdict. *Merrill* v. *Reville*, 135 Vt. 517, 519, 380 A.2d 96, 98 (1977). In the absence of error in the instructions given the jury by the court, the Marshalls are bound by the determination of the jury, *id.* at 520, 380

---

tions of the defendant, and two, mental distress, humiliation, physical pain and discomfort and inconvenience," along with punitive damages. This instruction, given after describing both tort claims, did not sufficiently distinguish the specific damages recoverable under each specific tort theory. In particular, the court did not explain that damages caused by the malicious prosecution claim are limited to injuries caused *after* the filing of that suit. Compare *Masi* v. *Laferriere*, 131 Vt. 363, 365, 306 A.2d 701, 702 (1973) (judgment in malicious prosecution action cannot be sustained where elements of damages not supported by evidence). In this case, the record fails to support the jury's award of $150,000 in post-filing damages.

A.2d at 98, and by making no objection to the court's charge, they have failed to preserve any issue relative thereto on appeal. *Ball v. Barre Electric Supply Co.*, 146 Vt. 245, 246, 499 A.2d 786, 787 (1985).

With respect to the argument that the jury verdict must have been a mistake because the jury found that the bank acted with malice when it returned a verdict for the Marshalls on the malicious prosecution claim, the standards, as well as the time periods, for the two torts are independent and do not necessarily overlap. The court charged the jury separately on each claim, and it is presumed that the jury followed the instructions given by the trial court. *Claude G. Dern Electric, Inc. v. Bernstein*, 144 Vt. 423, 427, 479 A.2d 136, 139 (1984). We find no error in this regard.

*Affirmed as to the denial of defendants' motion for a new trial on the issue of intentional infliction of emotional distress; reversed and remanded for a new trial on the issues of conversion and malicious prosecution.*