# Joseph J. and Doreen H. Siliski v. Allstate Insurance Company, James J. Guiel, Peggy Dumont and Michael Gannon

[811 A.2d 148]

No. 01-127

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed August 15, 2002

Motion for Reargument Denied September 5, 2002

*Ritchie E. Berger, Craig S. Nolan* and *Afi Ahmadi* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Plaintiffs-Appellants.

*Bret P. Powell* of *Powell, Orr & Bredice, P.C.*, Burlington, for Defendant-Appellee Allstate Insurance Co.

*Marc B. Heath* and *David E. Bond* of *Downs Rachlin & Martin, PLLC*, Burlington, for Defendant-Appellee Guiel.

*Thomas F. Heilmann* of *Heilmann, Ekman & Associates, Inc.*, Burlington, for Defendant-Appellee Gannon.

**Morse, J.** Plaintiffs Joseph and Doreen Siliski, individually and as guardians and next best friend of Chase Siliski, appeal from the superior court's summary judgment in favor of defendants Allstate Insurance Company, James Guiel, Michael Gannon and Peggy Dumont. The Siliskis brought suit against defendants for malicious prosecution and intentional infliction of emotional distress. They did so based on a counterclaim asserted by Dumont in a personal injury action by the Siliskis against her following an automobile accident involving Dumont and the Siliskis' son Chase, which Dumont later voluntarily dismissed. They argue on appeal that the trial court not only erroneously determined as a matter of law that the counterclaim giving rise to the Siliskis' malicious prosecution claim did not terminate in the Siliskis' favor, but also that they are entitled to judgment as a matter of law in their favor on this issue. Furthermore, they argue that the trial court erroneously determined as a matter of law that the counterclaim, which the Siliskis assert also gives rise to a claim for intentional infliction of emotional distress, was privileged and, in the alternative, failed to meet the threshold of conduct so extreme and outrageous as to establish a prima facie case. Defendants Allstate and Guiel have filed cross-appeals with regard to two discovery issues decided adversely to them in the event that we reverse the trial court's summary judgment. We affirm.[1]

Although there were numerous filings before the trial court prior to its grant of summary judgment, the actual record evidence before the court was considerably more circumscribed and demonstrates that the following material facts are not in dispute: On January 2, 1995, there was an accident involving Peggy Dumont and Chase Siliski, who was eight years old at the time. Dumont was operating an automobile, and Chase was on foot. A Vermont State Police report filed shortly after the accident concluded that the accident was caused by Chase's failure to look before crossing the road. Chase suffered a broken leg and an abrasion on his head from the collision. Dumont was pregnant at the time of the accident, and, two to three days after the accident, Dumont suffered a miscarriage.

---

[1] The Siliskis have moved to strike defendants' supplemental filing following oral argument in this case or in the alternative to consider their filing made in response. We deny the motion to strike and consequently have taken the Siliskis' responsive filing under advisement in deciding this case.

Chase's parents brought suit against Dumont individually and on Chase's behalf. Because Dumont was insured by Allstate, Allstate provided Dumont with defense counsel. The attorney hired by Allstate asserted a counterclaim on Dumont's behalf, which was subsequently amended. Among other things, each party claimed the other had caused the accident. More specifically, Dumont's amended claim alleged that as a result of the accident, as well as the Siliskis' allegations against her — contrary to Chase's statements at the time of the accident — she had suffered damages.

The parties proceeded to engage in discovery. Sometime after Allstate's attorney filed the counterclaim, Allstate's casualty claim manager, Frank Corso, learned of its filing. He instructed the staff claim analyst handling the case, James Guiel, to tell the attorney to withdraw his representation with respect to the counterclaim because Allstate had retained him only to provide a defense and he was concerned about potential conflicts arising from the dual representation. Guiel did so.

The attorney was unable to find replacement counsel to take over Dumont's claim. After discussing the status of the counterclaim with Dumont, the attorney filed a motion to dismiss the counterclaim without prejudice. In it, he cited the potential conflict arising from his dual representation and requested that the dismissal be without prejudice so that Dumont could file the claim at a later date should she find replacement counsel. The Siliskis filed a motion in opposition, requesting that the dismissal be *with* prejudice. They argued that Dumont had waived her privilege not to assert the counterclaim under V.R.C.P. 13(a)(3) (amended 1999) (excepting from compulsory counterclaims claims arising in actions covered by liability insurance which would require separate counsel), and thus Dumont's ability to reassert the claim would be barred by res judicata. They also argued that her claim would be barred by collateral estoppel, citing this Court's decision in *Berisha v. Hardy*, 144 Vt. 136, 474 A.2d 90 (1984). The court granted Dumont's motion to dismiss her counterclaim without prejudice, finding that neither res judicata nor collateral estoppel applied with respect to the dismissal, as no issue had proceeded to trial at that point, nor was there a final judgment. The court further noted that the decision to dismiss with prejudice was otherwise discretionary and declined to make the dismissal with prejudice.

The Siliskis' claim against Dumont proceeded to trial, and the jury returned a special verdict finding Dumont 60% negligent and Chase

40% negligent, and determining both individuals' negligence proximately caused the accident. Subsequent to the jury verdict, the Siliskis filed the present suit against Allstate, Allstate's claim analyst, Dumont's counsel and Dumont for malicious prosecution and intentional infliction of emotional distress (IIED) based on Dumont's counterclaim in the previous suit. The trial court granted summary judgment to the defendants, determining that, with regard to the claim of malicious prosecution, the dismissal of Dumont's counterclaim without prejudice did not terminate the claim in the Siliskis' favor; that the claim was privileged such that it could not give rise to a claim of IIED; and that filing the claim did not rise to the level of extreme and outrageous conduct as a matter of law. The Siliskis now appeal.

█ In order to recover for malicious prosecution, a plaintiff must demonstrate that a party instituted a proceeding against the individual without probable cause, that the party did so with malice, that the proceeding terminated in that individual's favor, and that the individual suffered damages as a result of the proceeding. *Chittenden Trust Co. v. Marshall*, 146 Vt. 543, 549, 507 A.2d 965, 969 (1986). As we have noted previously, the termination of the prior proceeding in the malicious prosecution claimant's favor is an "essential element" of the tort. *Id.* at 549, 507 A.2d at 970. The trial court in this case determined, as a matter of law, that the dismissal without prejudice in the prior proceeding giving rise to this case, examined in light of the circumstances surrounding that dismissal, was not a termination in the Siliskis' favor.

At least some courts have held that a voluntary dismissal simply cannot constitute a favorable termination for purposes of a malicious prosecution claim. See, e.g., *KT Bolt Mfg. Co. v. Tex. Elec. Coops.*, 837 S.W.2d 273, 275 (Tex. App. 1992) (voluntary nonsuit does not constitute a favorable termination); *Withall v. Capitol Fed. Sav. of Am.*, 518 N.E.2d 328, 331 (Ill. App. Ct. 1987) (under Illinois law voluntary dismissal alone is insufficient to satisfy requirement of favorable termination). But see *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352 (Ill. 1997) (categorical rule misinterpreted prior case law; a voluntary dismissal under certain circumstances *may* be sufficient to meet requirement). Other courts have adopted the Restatement approach which looks to the circumstances surrounding the dismissal. See, e.g., *Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986); *Wong v. Panis*, 772 P.2d 695, 699 (Haw. 1989); *Nelson v. Miller*, 607 P.2d 438, 446 (Kan. 1980); see also Restatement (Second) of Torts § 674, cmt. j (1977) (whether a

withdrawal or abandonment constitutes a favorable termination "depends upon the circumstances under which the proceedings are withdrawn"). We think this the better practice in such cases.

Under this approach, if the manner of termination, including dismissal, reflects negatively on the merits of the case, it will be considered favorable to the defendant. *Frey*, 722 P.2d at 279; *Wong*, 772 P.2d at 699. More specifically, if the dismissal somehow indicates that the defendant is innocent of wrongdoing, it will be considered a favorable termination. *Frey*, 722 P.2d at 278; *Union Oil of Cal. v. Watson*, 468 So. 2d 349, 353-54 (Fla. Dist. Ct. App. 1985). On the other hand, if the reason for dismissal is "not inconsistent" with a defendant's wrongdoing, it will not be considered a favorable termination. *Union Oil*, 468 So. 2d at 353, 355; see also *Cult Awareness Network*, 685 N.E.2d at 1353 ("a favorable termination is limited to only those legal dispositions that can give rise to an inference of lack of probable cause"). If the circumstances surrounding dismissal are ambiguous on this point, the determination should be left for trial. *Frey*, 722 P.2d at 279; see also *Chittenden Trust Co.*, 146 Vt. at 549, 507 A.2d at 970 (where there is a factual dispute with regard to the circumstances under which the prior proceedings were terminated, question should be left to jury).

■ There is no dispute regarding the material facts surrounding the voluntary dismissal at issue in this case, and the nature of the dismissal is unambiguous. Defendants explicitly requested dismissal without prejudice on the basis of the potential conflict arising from the dual representation and to preserve Dumont's ability to reinstate the claim should she find substitute counsel. Cf. *Ramsey v. Leath*, 706 F.2d 1166, 1171 (11th Cir. 1983) (voluntary dismissal without prejudice would not be considered favorable termination where it was done so that action could be refiled in a different forum); *Strutz v. McNagny*, 558 N.E.2d 1103, 1107 (Ind. Ct. App. 1990) (dismissal without prejudice to allow for claims to be filed in another pending proceeding did not constitute favorable termination). The trial court granted the motion on this basis and specifically declined the Siliskis' request that the dismissal be *with* prejudice, noting that no issue had been decided on the merits at the time of dismissal. Cf. *Pronger v. O'Dell*, 379 N.W.2d 330, 332 n.2 (Wis. Ct. App. 1985) ("a voluntary dismissal that does not adjudicate the merits of the claim does not constitute a favorable judicial termination of an action sufficient to support a claim for malicious prosecution"). The Siliskis made no further effort to contest the nature of the dismissal at that time or following trial, nor did they pursue sanctions

in the underlying proceeding based on the counterclaim they now assert was without merit and maliciously interposed. See V.R.C.P. 11(c) (providing for sanctions). Thus, the record before the trial court in this case regarding the circumstances surrounding the dismissal did not reflect on the merits of the claim nor did it evince an intent on Dumont's part to wholly abandon her claim. Cf. *Wong,* 772 P.2d at 699. Consequently, the trial court properly determined that the voluntary dismissal without prejudice, viewed in light of the surrounding circumstances, was not a favorable termination for purposes of the Siliskis' malicious prosecution claim.

The Siliskis argue, however, that the asserted basis for dismissal was mere pretext to withdraw a claim the defendants knew had no merit. The only evidence they point to, however, of this ulterior motive is an affidavit and deposition by their attorney in the former proceeding describing an internal memorandum from Dumont's attorney to Allstate that fell into his hands in the course of trial, and which has since disappeared, assessing the merits of Dumont's counterclaim in an unfavorable light. While evidence of this memo, which is of arguable admissibility, may be relevant to whether defendants had probable cause to bring the counterclaim and whether they did so with malice, it does not change the basis on which the *trial court* dismissed the claim — a basis which had no bearing on the merits. Furthermore, given the disfavor with which malicious prosecution suits are viewed, see *Anello v. Vinci,* 142 Vt. 583, 587, 458 A.2d 1117, 1120 (1983); *Cult Awareness Network,* 685 N.E.2d at 1357, speculating about the true grounds for seeking voluntary dismissal versus pretextual grounds should not be encouraged where the trial court has made a clear record of its reasoning for granting the motion to dismiss on the asserted basis and has specifically rejected an argument that a dismissal be with prejudice such as the court did in this case. Thus, the affidavit cannot convert the nature of the court's dismissal into a favorable termination for the Siliskis.

The Siliskis also argue that, despite the trial court's dismissal without prejudice and the circumstances surrounding it, the dismissal became a termination in their favor by operation of law when the jury determined that Chase was only 40% responsible for the collision (notably, the jury determined he *was* in fact negligent and partially responsible for the collision). This argument is premised on the theory that a future suit by Dumont would be disposed of by summary judgment based on collateral estoppel (notably *not* res judicata). See *Berisha,* 144 Vt. at 138-39, 474 A.2d at 91 (notwithstanding fact that

rule allowed counterclaim to be asserted in separate, subsequent action, party entitled to summary judgment because collaterally estopped from relitigating issue of comparative negligence of two parties to accident determined in earlier suit). This hypothetical summary judgment is both logically and factually remote from the trial court's dismissal without prejudice that the Siliskis rely on as the termination-in-their-favor element of their malicious prosecution claim, however. Cf. *Withall*, 518 N.E.2d at 331-32 (voluntary dismissal without prejudice in combination with award of Rule 11-type sanctions in underlying suit could not be equated with favorable termination for purposes of malicious prosecution suit). Furthermore, even if the subsequent determination by the jury that Chase was less negligent than Dumont could definitively prevent Dumont from reasserting her negligence claim against Chase individually under our hybrid comparative negligence scheme because of collateral estoppel, see 12 V.S.A. § 1036, it does not prevent her from reasserting her claim against Mr. and Mrs. Siliski for negligent supervision. A jury has never determined the issue of their potential negligence. Lastly, Dumont's claim based on the allegations in the Siliskis' suit against her are not disposed of by the jury's verdict apportioning responsibility for the collision, regardless of whatever merit they may have independent of that. Therefore, the jury verdict is only relevant to one of her several counterclaims against the Siliskis, and remotely at that.

Finally, were we to hold that the dismissal for reasons wholly unrelated to the merits of the suit, *in combination with* the argument that collateral estoppel would entitle the Siliskis to summary judgment in a subsequent suit by Dumont based on a claim of negligence against Chase individually, is tantamount to or the equivalent of a favorable termination, it would be at least as appropriate to apply collateral estoppel in *this case* at the summary judgment stage on the issue of whether Dumont had probable cause to bring her counterclaim. See *Cook v. Nelson*, 167 Vt. 505, 511, 712 A.2d 382, 385 (1998) (essential element of tort of malicious prosecution is commencement of a suit without probable cause); *Condosta v. Grussing*, 144 Vt. 454, 458, 479 A.2d 149, 151 (1984) (want of probable cause is necessary element in cause of action for malicious prosecution). In other words, the Siliskis should be estopped from arguing that Dumont had no probable cause to bring her negligence claim by the jury's determination that Chase *was* negligent (albeit less so than Dumont) and his negligence was in part the proximate cause of the accident. Thus, the defendants are arguably entitled to summary judgment on that alternate basis as well.

See *Larkin v. City of Burlington*, 172 Vt. 566, 568, 772 A.2d 553, 556 (2001) (mem.) ("we will not reverse [a] trial court's underlying decision if the record before us reveals any legal grounds that would justify the result").

Interestingly, the Siliskis point out that defendants' suit is also now barred by the statute of limitations, and thus argue it should be considered terminated in their favor on that basis. But this point only highlights the danger of relying on a procedural bar that is factually remote from the circumstances actually giving rise to a dismissal without prejudice to meet the prima facie requirement of termination of the underlying suit in a party's favor. The two should not be equated. Otherwise, a party could always meet this element in a malicious prosecution suit any time an underlying suit is not reinstated before the statute of limitations tolls, an event that has no relation to the merits of the underlying suit or the circumstances surrounding the dismissal itself. A successful claim for malicious prosecution has to require more. See *Wong*, 772 P.2d at 699 (voluntary dismissal without prejudice in combination with running of statute of limitations did not satisfy requirement of favorable termination as statute-of-limitations bar did not reflect on merits of claim); see also *Palmer Dev. Corp. v. Gordon*, 723 A.2d 881, 884 (Me. 1999) (dismissal on statute-of-limitations grounds does not constitute a favorable termination for purposes of malicious prosecution), and cases cited therein.

█With respect to the trial court's summary judgment on the Siliskis' IIED claim, we need not decide whether the act of filing suit is privileged such that it may never give rise to a claim for IIED, as we can affirm based on the trial court's alternate rationale that the assertion of the counterclaim at issue in this case was, as a matter of law, not conduct so extreme and outrageous as to exceed the bounds of acceptable conduct. The elements of IIED include extreme and outrageous conduct, done intentionally or with reckless disregard of the probability of resulting emotional distress to the claimant, that has in fact resulted in extreme emotional distress. *Denton v. Chittenden Bank*, 163 Vt. 62, 66, 655 A.2d 703, 706 (1994). "As a threshold issue, the trial court must determine whether the conduct was so extreme and outrageous that a jury could reasonably find liability." *Id.* Accordingly, the Siliskis must demonstrate to the trial court, and this Court on appeal, that defendants' conduct was "so outrageous as to surpass all possible bounds of decency, and .... be regarded as atrocious, and utterly intolerable in a civilized community." *Gallipo v.*

*City of Rutland*, 163 Vt. 83, 94, 656 A.2d 635, 643 (1994) (internal quotation marks and citations omitted, alteration in original).

The Siliskis base their claim for IIED on their allegations that defendants filed a counterclaim in the Siliskis' suit without "factual, medical or legal basis" and did so for the purpose of "humiliating, embarrassing, and intimidating [the Siliskis], and coercing [them] into dropping their bona fide claims against Dumont." These allegations, even if true, are simply not enough to make out a claim for IIED.[2] Furthermore, defendants' claim was a permissive counterclaim filed *in response to* the Siliskis' claim, as opposed to a claim asserted on defendants' own initiative, and the circumstances of the collision giving rise to the claims were ambiguous with regard to fault. Thus, we agree with the trial court that filing the counterclaim and its surrounding circumstances fail as a matter of law to meet the heavy burden of establishing a prima facie case of IIED. See *Denton*, 163 Vt. at 66, 655 A.2d at 706 (standard for establishing outrageous conduct "necessarily a high one"); *Gallipo*, 163 Vt. at 94, 656 A.2d at 643 (plaintiff's burden on claim of IIED "a heavy one"); cf. *Schwartz v. Frankenhoff*, 169 Vt. 287, 299, 733 A.2d 74, 83-84 (1999) (acts of sending demand letter for amount beyond recipient's means and refusing settlement offer fell "far short" of the conduct necessary to give rise to claim for IIED).

*Affirmed.*

---

[2] These allegations more closely resemble the proof necessary to establish a violation of V.R.C.P. 11, which would appear to be the more appropriate remedy in such circumstances. See V.R.C.P. 11(b) & (c). But, as noted above, the Siliskis failed to pursue Rule 11 sanctions in the previous action before or after trial, despite possessing knowledge of all of the facts they now claim give rise to their claim for IIED.