IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2009 Session

## JAMES DANIEL RICHARDSON ROBERTS, JR. v. CHAMPS-ELYSEES, INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 07C3747      Walter C. Kurtz, Judge**

---

**No. M2008-01577-COA-R3-CV - Filed May 28, 2009**

---

Appellant challenges the dismissal of his malicious prosecution action and the imposition of Rule 11 sanctions. Finding that an essential element of Appellant's cause of action had been negated, the trial court's dismissal is affirmed. Finding there to be no abuse of discretion, the trial court's imposition of sanctions is affirmed. Finding this appeal to be frivolous as to one of the Appellees, we remand the case for the trial court to determine the damages to be awarded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR and ANDY D. BENNETT, JJ. joined.

Janet L. Layman, Nashville, Tennessee, for the appellant, James Daniel Richardson Roberts, Jr.

Eugene N. Bulso, Jr., Nashville, Tennessee, for the appellees, Champs-Elysees, Incorporated and Edna L. Green.

## OPINION

### I. Factual and Procedural History

Attorney James Daniel Richardson Roberts, Jr. (hereinafter "Mr. Roberts") filed this action in Davidson County Circuit Court against Champs-Elysees, Inc. and Edna L. Green, a director, shareholder, and employee of Champs-Elysees, Inc., alleging the defendants maliciously prosecuted a contempt action against him for his alleged misconduct in a previous but separate action. In the previous action, Mr. Roberts was the attorney of record for John Wesley Green, the founder and former president of Champs-Elysees, Inc., who filed a declaratory judgment action in Davidson County Chancery Court against Ms. Green, seeking to have a stock-sale contract by which she agreed to sell her stock in Champs-Elysees, Inc. to him declared valid and enforceable. The trial court

granted a motion to intervene filed in the suit by Champs-Elysees, Inc. alleging that Mr. Green had misappropriated funds from the company; Mr. Green filed a countercomplaint against Champs-Elysees, Inc. On July 21, 2006, the court found in favor of Champs-Elysees, Inc. and Ms. Green (collectively herein referred to as "Appellees"), awarded Champs-Elysees, Inc. judgment in the amount of $46,000, and granted Ms. Green rescission of the stock-sale contract.[1] Mr. Green filed an appeal to this Court, which affirmed in part and reversed in part and remanded the case to the trial court. The Appellees herein filed a Rule 11, Tenn. R. App. P., application with the Tennessee Supreme Court, which granted permission to appeal and where the matter is currently pending.

Mr. Green did not file a bond to stay execution on the judgment pending appeal. On October 23, 2006, the Davidson County Clerk & Master issued a writ of execution, directing the Sheriff to sell Mr. Green's stock in Champs-Elysees, Inc. to satisfy the $46,000 judgment against him. On December 14, Mr. Roberts filed, on behalf of Mr. Green, a document styled "Motion For Temporary Injunction (Restraining Order) Or In The Alternative Motion To Quash Execution And/Or Motion To Stay Execution Pending Appeal," based on numerous alleged deficiencies in the proposed sale of the stock in execution on the judgment. No hearing on the motion was held prior to December 22, and the Sheriff's sale took place as scheduled on that date. Champs-Elysees, Inc. purchased the stock at the sale for court costs, plus $0.50.

The motion which had been filed on December 14, 2006, was heard on January 5, 2007, but was dismissed as moot since the sale had already taken place. On January 19, Mr. Roberts filed, on behalf of Mr. Green, a document styled "Motion to Alter or Amend Order Denying Motion to Quash or in the Alternative Motion to Set Aside Execution Sale," which was denied on February 2. Mr. Green appealed to this Court; that appeal is currently being held in abeyance pending resolution of the first matter by the Tennessee Supreme Court.

On December 22, 2006, Champs-Elysees, Inc. filed a Motion to Show Cause against Mr. Roberts, requiring him to show cause "as to why he should not be held in contempt" based on his alleged interference with the execution sale.[2] Champs-Elysees, Inc. withdrew the motion when told by the trial court that it was not procedurally proper[3] and on January 12, 2007, filed a Petition for

---

[1] The underlying facts of the case are not relevant; the only part pertinent to this appeal is the trial court's award of damages.

[2] Prior to the sale of Mr. Green's stock in Champs-Elysees, Inc., the Sheriff's Department distributed a "Notice of Sheriff's Sale" ("Notice"). The motion which had been filed on December 14 identified a typographical error on the Notice, which misspelled Champs-Elysees, Inc. as "Champs-Elyees," as a deficiency in the writ of execution. Also on December 14, 2006, George Armstrong, sought and was issued a corporate charter from the Tennessee Secretary of State for a corporation called "Champs-Elyees, Inc." - the same spelling as was found on the Notice. Mr. Armstrong testified during a later hearing that the formation of Champs-Elyees, Inc. was Mr. Roberts' idea and that Mr. Armstrong formed the company as a favor to Mr. Roberts.

[3] At the January 5, 2007, hearing on the Motion to Quash, the trial court addressed Champs-Elysees, Inc.'s Motion to Show Cause by stating:

(continued...)

Contempt ("Petition"), alleging that "Mr Roberts intentionally attempted to disrupt the execution sale in order to frustrate the sale of his client's stock through the ex post facto formation of a bogus entity by the name of 'Champs-Elyees Inc.'" A hearing on the Petition was scheduled for February 20, 2007. For her part, Ms. Green did not join in either the Motion to Show Cause or the Petition.

On February 15, 2007, Mr. Roberts filed a motion seeking dismissal of the Petition, asserting that it failed to allege misconduct which rose to the level of contempt. The February 20 hearing on the Petition was suspended because Mr. Armstrong, who was subpoenaed to testify, failed to appear; the hearing was reset for February 28. On February 26, Mr. Roberts filed an Answer to the Petition and a supplement to his Motion to Dismiss; a second supplement to the Motion to Dismiss was filed on February 28.[4]

Following the hearing on February 28, the court entered its order on April 4. The order stated, *inter alia,* that "[t]he Court is of the opinion that Mr. Roberts' conduct rises to the level of criminal contempt" but that it could not impose sanctions because Mr. Roberts "was not charged with criminal contempt" and was not "[g]iven the due process requirements triggered by a criminal contempt action." However, the order went on to state that "the Court finds Mr. Roberts' testimony throughout this proceeding to be evasive and untruthful, which causes the court grave concern about Mr. Roberts' veracity as an officer of the Court and as a witness under oath." The order directed the clerk of the court to "forward to the Board of Professional Responsibility a copy of the transcripts from the contempt hearing and all orders issued pursuant to the [Petition]."

On December 20, 2007, Mr. Roberts filed the instant suit for malicious prosecution against the Appellees contending that the Motion to Show Cause and the Petition were filed against him for the purpose of harassing him. The complaint sought over $2,000,000 in compensatory and punitive damages.[5] On January 18, 2008, the Appellees filed a Motion to Dismiss for failure to state a claim for relief, asserting that the claim was "not premised on a prior suit or legal proceeding, but rather a Motion to Show Cause, as to which [Mr. Roberts] was not even the prevailing party" and, further,

---

[3](...continued)

...[A] motion to show cause is not proper...because if it's sanctions that you were requesting, it has to be done by a petition. There has to be service on the Defendant...[I]n the past, when an attorney has filed a motion to show cause, I usually advise them that I am not in the position to grant a motion to show cause.

...[T]he reason is because you do have to give proper service, and you have to have an order...ordering a person to appear and show cause why they shouldn't be held in contempt. And part of what you have put in here may warrant that, but I can't do that on a motion.

***

...I regard the power that I have to hold someone in contempt to be one that I don't use lightly, and therefore, if you feel strongly about this, you need to do it properly, and that's by petition.

[4] The record does not contain an order disposing of the Motion to Dismiss, but the transcript of the hearing suggests that the trial court did not consider the motion because it was not filed more than five days prior to the hearing, as required by the local rules.

[5] Mr. Roberts filed an amended complaint to request a jury be empaneled.

that the malicious prosecution claim should fail as to Ms. Green because she was not a party to the motion. On March 14, the trial court heard the Motion to Dismiss[6] and granted the motion by order entered on March 24, finding that the "contempt proceeding in Chancery Court was. . . not terminated in Mr. Roberts' favor, which is an essential element for a claim for malicious prosecution."

Also on March 14, the Appellees filed a motion seeking sanctions against Mr. Roberts for allegedly violating Rule 11, Tenn. R. Civ. P.; Mr. Roberts filed a response to the motion on March 24. Following a hearing on April 4, the court granted the motion, finding that "the filing of [the malicious prosecution] action was objectively unreasonable." Mr. Roberts was ordered to pay attorneys' fees and expenses in the amount of $4,000 to Ms. Green and $2,500 to Champs-Elysees, Inc. On April 22, Mr. Roberts filed a Motion to Alter or Amend the Judgment on a number of grounds; the motion was supplemented on May 30. The trial court denied the motion by order entered on June 25.

Mr. Roberts appeals, asserting the following issues:

1. Whether the trial court erred in granting the Appellees' Rule 12.02 Motion to Dismiss.

2. Whether the trial court erred by imposing Rule 11 sanctions.

Appellees raise the following issue:

1. Whether Mr. Roberts' appeal is frivolous.

## II. Analysis

### A. Motion to Dismiss

When considering a Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss, matters outside the pleadings should not be considered. *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). If a trial court does consider materials outside the pleadings, then Rule 12.02, Tenn. R. Civ. P., provides that a motion to dismiss "shall be treated as one for summary judgment and disposed of as provided in Rule 56." The trial court's order stated that it "has reviewed the Motion [to Dismiss], the memoranda and other papers submitted in connection therewith, and has

---

[6] The Appellees' Motion to Dismiss was initially granted by default on February 6, 2008, based on Mr. Roberts' attorney's failure to file a Response to the Motion to Dismiss. Mr. Roberts filed a Motion to Vacate Judgment; a hearing was held on February 22, 2008. The trial court granted the motion in an order entered on February 26, 2008, finding that, pursuant to Rule 60.02, Tenn. R. Civ. P., Mr. Roberts' attorney "admitted some degree of neglect in [Appellees'] Order of Dismissal being granted by default." The trial court's grant of the motion, however, was conditioned upon Mr. Roberts' attorney's payment of the Appellees' attorneys' fees. Mr. Roberts' attorney subsequently paid the Appellees' attorneys' fees and filed a Response to the Motion to Dismiss on March 10, 2008.

-4-

heard arguments of counsel." Since the trial court considered materials outside the pleadings, this Court will review the trial court's action using the standard applicable to a ruling on a Rule 56, Tenn. R. Civ. P., summary judgment motion.[7]

Summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law, *see* Tenn. R. Civ. P. 56.04; *Stoval v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003), and should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn.2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W. 3d 265, 269 (Tenn. 2001). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000). Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. V. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977).

Neither party to this appeal asserts that there is a dispute as to any material fact; therefore, our review will focus upon whether the Appellees were entitled to a dismissal of the action as a matter of law.

To succeed in a claim for malicious prosecution, "[a] plaintiff must show (a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor." *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005) (citing *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992)).[8] The trial court granted the motion to dismiss the malicious prosecution action because the contempt proceeding upon which it was based was not terminated in favor of Mr. Roberts and, consequently, Appellees had negated an essential element of his claim of malicious prosecution. Thus, the determinative issue in this appeal is whether the termination of the contempt proceeding has the effect of sustaining Mr. Roberts' action for malicious prosecution.

---

[7] In his brief on appeal, Mr. Roberts states that this court must review the trial court's actions using the standard of review applicable to motions under Rule 12.02, Tenn. R. Civ. P. and, in their brief, the Appellees agree. However, in his reply brief, Mr. Roberts asserts that the standard of review applicable to summary judgment under Rule 56, Tenn. R. Civ. P., is the appropriate standard. Despite Mr. Robert's initial assertion, and the Appellees' concurrence, that the Rule 12.02, Tenn. R. Civ. P., standard must be used, this Court is obligated to review the grant of a Motion to Dismiss based on the standard applicable to summary judgment if the trial court did not exclude materials outside the pleadings in its consideration of the motion. *See* Tenn. R. Civ. P. 12.02 (holding that "[i]f...matters outside the pleading are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment) (emphasis added).

[8] The trial court's order granting the Motion to Dismiss stated that "[b]oth the plaintiff and the defendants have cited to and relied upon *Parrish* and recognize it as controlling."

"In determining whether a specific result was a favorable termination, a court must examine the circumstances of the underlying proceeding." *Parrish*, 172 S.W.3d at 531. In defining "favorable termination," the Tennessee Supreme Court relied on an opinion from the Supreme Court of Vermont, which held:

> [I]f the manner of termination, including dismissal, reflects negatively on the merits of the case, it will be considered favorable to the defendant.... More specifically, if the dismissal somehow indicates that the defendant is innocent of wrongdoing, it will be considered a favorable termination.... On the other hand, if the reason for dismissal is "not inconsistent" with a defendant's wrongdoing, it will not be considered a favorable termination.... If the circumstances surrounding dismissal are ambiguous on this point, the determination should be left for trial.

*Id*. (quoting *Siliski v. Allstate Ins. Co.*, 811 A.2d 148, 151 (Vt. 2002)); *see also Sewell v. Par Cable, Inc.*, 1988 WL 112915, at *3 (Tenn. Ct. App. Oct. 26, 1998) (holding that "[f]or purposes of a malicious prosecution action, a favorable termination must be one indicating that the accused is innocent...[a] disposition that does not indicate the plaintiff's innocence is not considered a favorable termination").

Mr. Robert's complaint was based on the filing and pursuit of the Motion to Show Cause and the Petition, which he contends were separate legal proceedings. Appellees assert that they withdrew the Motion to Show Cause to re-file it as the Petition for Contempt, thereby creating only one legal proceeding. For purposes of our review, since Mr. Roberts premised a separate claim for malicious prosecution on each filing, we will consider whether both the Motion to Show Cause and the Petition were terminated in his favor.[9]

In support of his assertion that the Motion to Show Cause was terminated in his favor, Mr. Roberts relies upon the Tennessee Supreme Court's opinion in *Christian v. Lapidus*, 833 S.W.2d 71 (Tenn. 1992), which held "that abandonment or withdrawal of an allegedly malicious prosecution is sufficient to establish a final and favorable termination so long as such abandonment or withdrawal was not accomplished by a compromise or settlement, or accomplished in order to refile the action in another forum." *Id*. at 74. He contends that the Appellees withdrew the Motion to Show Cause without a "compromise or settlement, or. . . in order to refile. . . in another forum," and, therefore, the withdrawal of the motion was a favorable termination upon which he could base a malicious prosecution claim.

The Appellees assert that their withdrawal of the Motion to Show Cause "could not possibly form the basis for an action for malicious prosecution" because of the Tennessee Supreme Court's opinion in *Parrish v. Marquis*, 172 S.W.3d 526 (Tenn. 2005), which reconsidered its finding in *Christian*, *supra*, and held that:

---

[9] Because the factual basis of the Motion to Show Cause and the Petition is the same, however, our discussion of the facts is applicable to both.

We are persuaded by our examination of the decisions of other states and other authority that the almost universal rule is that a dismissal of a complaint on procedural grounds that do not reflect on the merits is not a "favorable termination" for a malicious prosecution cause of action. . . . Our conclusion requires that we disagree with the Court of Appeals' view that *any* outcome of the underlying lawsuit or judicial proceeding favorable to the original defendant will support the favorable termination element so long as that outcome "was not accomplished by a compromise or settlement, or accomplished in order to refile the action in another forum." Such a broad interpretation of this essential element is not supported by our decision in *Christian* or by the persuasive, almost overwhelming authority from other courts and legal commentators.

*Id*. at 532-33 (emphasis in original).

*Parrish* clearly established that the termination of an action in favor of a party, sufficient to sustain a subsequent malicious prosecution action brought by that party, must be more than a mere procedural disposition of the action, but must in some manner "reflect on the merits" of the action. The record before us shows that Champs-Elysees, Inc.'s withdrawal of the Motion to Show Cause was done because the trial court stated it could not consider the motion since it was not the proper mechanism for bringing a contempt action and, consequently, the withdrawal was a procedural disposition and did not "reflect on the merits" of the action. In accordance with the holding in *Parrish*, the withdrawal of the motion is not a termination in favor of Mr. Roberts upon which he could premise a malicious prosecution action.

In support of his assertion that the Petition was terminated in his favor, Mr. Roberts contends that "[d]espite [the April 4 order's] negative comments, the harm caused to his reputation, and the monetary damages suffered. . . [t]he Chancellor could not, and did not, find Mr. Roberts had committed any act of contempt."

In support of their contention that the contempt proceeding was not terminated in Mr. Robert's favor, Appellees primarily rely upon the trial court's April 4, 2007, order disposing of the Petition for Contempt, which held:

This Court is of the opinion that Mr. Roberts' conduct rises to the level of criminal contempt pursuant to Tenn. Code Ann. § 29-9-102(2) and (3), but Mr. Roberts was not charged with criminal contempt, a serious charge that requires that he be given adequate notice of the charges against him, the right to counsel and to remain silent and that his guilt be established beyond a reasonable doubt. Given the due process requirements triggered by a criminal contempt action, the Court is of the opinion that it cannot impose additional sanctions upon Mr. Roberts for his conduct prior to and at the judicial sale or for his involvement with Mr. Armstrong's conduct in this matter, including Mr. Armstrong's failure to obey the subpoena. However, the Court finds Mr. Roberts' testimony throughout this proceeding to be evasive and untruthful,

which causes the court grave concern about Mr. Roberts' veracity as an officer of the Court and as a witness under oath. Accordingly, the Clerk is directed to forward to the Board of Professional Responsibility a copy of the transcripts from the contempt hearing and all order issued pursuant to the Verified Petition for Contempt, including the Order in which Mr. Armstrong was found in contempt for willful failure to obey his subpoena.

Appellees argue that, even though the trial court did not find Mr. Roberts guilty of criminal contempt, the language of the order does not support a finding that the contempt proceeding was "terminated on a basis favorable to Mr. Roberts" and that they successfully negated an essential element of his malicious prosecution claim.

We agree that the disposition of the contempt proceeding was not a termination in favor of Mr. Roberts, with the effect of sustaining his action for malicious prosecution, particularly in light of the court's findings that his conduct rose to the level of criminal contempt and that his testimony was evasive and untruthful. Although he was not sanctioned by the court for his behavior relative to the execution sale and Mr. Armstrong's conduct, the trial court did not find Mr. Roberts to be innocent of wrongdoing; the court did not hold him in criminal contempt solely because he was not charged with it. *Parrish*, 172 S.W.3d at 531 (citing *Siliski*, 811 A.2d at 151); *Sewell*, 1988 WL 112915, at *3. The disposition of the Petition was "not inconsistent" with Mr. Robert's wrongdoing. *Parrish*, 172 S.W.3d at 531 (citing *Siliski*, 811 A.2d at 151). Inasmuch as there was not a favorable termination upon which Mr. Roberts could premise a malicious prosecution, an essential element of his cause of action had been negated.

Mr. Roberts failed to meet his burden of overcoming the negation of an essential element of his claim, i.e., that the Motion to Show Cause and the Petition were terminated favorably to him; consequently, the Appellees were entitled to have the complaint dismissed as a matter of law and the trial court's grant of the motion to dismiss was proper.

### B. Rule 11 Sanctions

On February 22, 2008, the Appellees sent a copy of a Motion for Rule 11 Sanctions to Mr. Roberts, stating that if his complaint for malicious prosecution was not withdrawn within 21 days, the motion would be filed with the court. When the complaint was not withdrawn, the Appellees filed the motion, alleging that Mr. Roberts violated Rule 11.02(2), Tenn. R. Civ. P.,[10] because "the

---

[10] Rule 11.02, Tenn. R. Civ. P., states, in part pertinent, that:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
***

(continued...)

claims asserted in the Complaint and Amended Complaint are not warranted by existing law nor are they warranted by a non frivolous argument for the extension modification or reversal [sic] of existing law or the establishment of new law" and asking for sanctions under Rule 11.03, Tenn. R. Civ. P.[11]  As aforesaid, the court imposed attorneys' fees and expenses totaling $6,500 on Mr. Roberts as sanctions for the filing of the action.

"The purpose of Rule 11. . . is to curb abuse in the litigation process by deterring baseless filings which put 'the machinery of justice in motion, burdening courts and individuals alike with needless inconvenience, expense, and delay.'" *Project Creation, Inc. v. Neal*, 2001 WL 950175, at *7 (Tenn. Ct. App. Aug. 21, 2001) (quoting *Andrews v. Bible*, 812 S.W.2d 284, 292 (Tenn. 1991)). "A signature signifies to the Court that the signer has read the pleading, motion, or other paper, has conducted a reasonable inquiry into the facts and the law, and is satisfied that the document is well-grounded in both, and is acting without any improper motive." *Andrews*, 812 S.W.2d at 287. "An attorney who signs a paper without the required substantiated belief 'shall' be penalized by 'an appropriate sanction.'" *Id*. at 288 (quotes in original). "This sanction may, but need not, include payment of the other party's expenses." *Id*. "The test to be applied in deciding whether an attorney's conduct is sanctionable, is one of objective reasonableness under all the circumstances. . . and the reasonableness of the attorney's belief must be assessed in light of the circumstances existing at the time the document in question was signed." *Id*. (internal citations omitted).

An appellate court "reviews the trial court's decision to impose sanctions under an abuse of discretion standard. . . and the trial judge's decision is entitled to great weight on appeal." *Stigall v. Lyle*, 119 S.W.3d 701, 706 (Tenn. Ct. App. 2003) (internal citations omitted) (citing *Andrews*, 812 S.W.2d 284 (Tenn. 1991); *Krug v. Krug*, 838 S.W.2d 197 (Tenn. Ct. App. 1992)).  The Tennessee Supreme Court addressed the abuse of discretion standard in *Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001) stating that:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made."  A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party

---

[10](...continued)

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law...

[11] Rule 11.03, Tenn. R. Civ. P., states, in part pertinent, that:

If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.

complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (internal citations omitted).

The trial court's order granting the motion for sanctions, contained the following findings:

2. Chancellor McCoy...found that [Mr. Roberts'] conduct rose to the level of criminal contempt. Chancellor McCoy ultimately referred the matter to the Board of Professional Responsibility.

3. ...Because of the emphatic findings of Chancellor McCoy, there simply is no way for the Court to conclude that the filing of this malicious prosecution action was "objectively reasonable."

4. The Court finds that Rule 11 sanctions against Mr. Roberts are appropriate because the filing of this action was objectively unreasonable...

The trial court did not apply an incorrect legal standard in its consideration of the motion for sanctions, as the disposition of the contempt petition was not a favorable termination to Mr. Roberts and, consequently, the claims and contentions in the malicious prosecution action were not warranted under the law and the court's finding that the filing of the action was objectively unreasonable is supported by the evidence. As such, the trial court did not abuse its discretion in imposing Rule 11 sanctions.

### C. Frivolous Appeal

Appellees contend that this appeal is frivolous and seek an award of damages.

"A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995) (quoting *Combustion Engineering, Inc. v. Kennedy*, 562 S.W.2d 202 (Tenn. 1978)) (internal citations omitted). "Successful litigants should not have bear the expense and vexation of groundless appeals." *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977).

The remedy for a frivolous appeal is provided in Tenn. Code Ann. § 27-1-122, which states:

[w]hen it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on judgment and expenses incurred by the appellee as a result of the appeal.

*Id.* This statute "must be interpreted and applied strictly so as not to discourage legitimate appeals..." *Davis v. Gulf Ins. Group*, 546 S.W.2d 583 at 586 (Tenn. 1997).

The contempt proceeding upon which Mr. Roberts premised his malicious prosecution claim was brought on behalf of Champs-Elysees, Inc. alone and Ms. Green did not join in filing either the Motion to Show Cause or the Petition. In this appeal, Mr. Roberts does not argue that Ms. Green was a proper party to the malicious prosecution action nor in any manner does he distinguish between Ms. Green and Champs-Elysees, Inc. in discussing the court's imposition of sanctions. There was no factual or legal basis for including Ms. Green as a party defendant to the malicious prosecution action and no basis for including her as a party to this appeal. We find the appeal to be frivolous as respects Ms. Green. Given the court's imposition of monetary sanctions against Mr. Roberts, we do not find the appeal frivolous as to Champs-Elysees, Inc.

## III. Conclusion

For the reasons set forth above, the decision of the Circuit Court is AFFIRMED and the matter is REMANDED to the trial court for a determination of damages as a result of the finding that this appeal is frivolous as to Ms. Green.

Costs are assessed against Mr. Roberts, for which execution may issue if necessary.

_____
RICHARD H. DINKINS, JUDGE

-11-